MEADE (COOMBE v.). See Case No. 3,188.

---

## Case No. 9,372.

### MEADE v. DEPUTY MARSHAL.

[1 Brock. 324;[1] 5 Hall, Law J. 536; 2 Car. Law Repos. 329.]

Circuit Court, D. Virginia. Nov. Term, 1815.

MILITARY LAW—COURT MARTIAL—ASSESSMENT OF FINES—MILITIA—NOT IN ACTIVE SERVICE —NOTICE.

1. It seems, that a court martial, organized under the authority of a state, has no power to assess fines upon delinquent militia-men, for fail-

[1] [Reported by John W. Brockenbrough, Esq.]

ing to obey a requisition to enter the service, emanating from the secretary of war.

2. A court of inquiry is the proper tribunal for assessing fines against delinquent militia, or for the trial of privates not in actual service, under the laws of Virginia.

3. The sentence of a court martial rendered against an individual without notice, is void.

[Cited in Flint River S. Co. v. Roberts, 2 Fla. 102; Flint River S. Co. v. Foster, 5 Ga. 194; Board of Com'rs v. Johnson, 124 Ind. 153, 24 N. E. 148; Dullam v. Willson, 53 Mich. 406, 19 N. W. 112; People v. Martin (Colo. Sup.) 36 Pac. 546; Evans v. Johnson (W. Va.) 19 S. E. 624.]

[This was an action by William Meade against the deputy marshal of the Virginia district.]

Motion to be discharged under a writ of habeas corpus.

MARSHALL, Circuit Justice. By the return of the deputy marshal, it appears, that William Meade, the petitioner, was taken into custody by him, and is detained in custody, on account of the nonpayment of a fine of forty-eight dollars, assessed upon him by the sentence of a court martial, for failing to take the field, in pursuance of general orders of the 24th of March, 1813, the marshal not having found property, whereof the said fine might have been made. The court martial was convened by the following order:

"November 8th, 1813. Brigade Orders. A general court martial, to consist of Lieutenant Colonel Mason, president, &c., will convene at the court house, in Leesburg, on Friday, the third day of next month, for the trial of delinquencies, which occurred under the late requisitions of the governor of Virginia, and secretary of war, for militia from the county of Loudoun. (Signed) Hugh Douglass, Brigadier General, Sixth Brigade of Va. Militia."

The court being convened, the following proceedings were had: "It appearing to the satisfaction of the court, that the following persons of the county of Loudoun, were regularly detailed for militia duty, and were required to take the field, under general orders, of March 24th, 1813, but refused, or failed to comply therewith; whereupon, this court doth order and adjudge, that they be, each, severally fined the sum annexed to their names, as follows, to wit: William Meade, forty-eight dollars," &c. On the part of the petitioner, the obligation of this sentence is denied. 1st. Because it is a court, sitting under the authority of the state, and not of the United States. 2dly. It has not proceeded according to the laws of the state, nor is it constituted according to those laws. 3dly. Because the court proceeded without notice.

1st. The court was unquestionably convened by the authority of the state, and sat as a state court. It is, however, contended, that the marshal may collect fines, assessed by a state court, for the failure of a militiaman to take the field, in pursuance of the orders of the president of the United States. The constitution of the United States, gives power to congress, "to provide for calling forth the militia to execute the laws of the Union," &c. In the execution of this power, it is not doubted, that congress may provide the means of punishing those who shall fail to obey the requisitions, made in pursuance of the laws of the Union, and may prescribe the mode of proceeding against such delinquents, and the tribunal before which such proceedings should be had. Indeed, it would seem reasonable to expect, that all the proceedings against delinquents, should rest on the authority of that power, which has been offended by the delinquency. This idea must be retained, whilst considering the acts of congress. The first section of the act of 1795 [1 Stat. 424], authorizes the president, "whenever the United States shall be invaded, or be in imminent danger of invasion," &c., "to call forth such number of the militia of the state, or states, most convenient to the place of danger, or scene of action, as he may judge necessary, to repel such invasion, and to issue his orders for that purpose, to such officer, or officers of the militia, as he shall think proper." The fifth section enacts, "that every officer, non-commissioned officer, or private of the militia, who shall fail to obey the order of the president of the United States, in any of the cases before recited, shall forfeit a sum, not exceeding one year's pay, and not less than one month's pay, to be determined and adjudged by a court martial." The sixth section enacts, "that courts martial, for the trial of militia, shall be composed of militia officers only." Act Feb. 28, 1795; 1 Story's Laws, 389, c. 101 [1 Stat. 424, c. 36]. Upon these sections, depends the question, whether courts martial for the assessment of fines against delinquent militia-men, should be constituted under the authority of the United States, or of the state to which the delinquent belongs. The idea originally suggested, that the tribunal for the trial of the offence, should be constituted by, or derive its authority from, the government against which the offence had been committed, would seem to require, that the court thus referred to in general terms, should be a court sitting under the authority of the United States. It would be reasonable to expect, if the power were to be devolved on the court of a state government, that more explicit terms would be used for conveying it. And it seems, also, to be a reasonable construction, that the legislature, when in the sixth section, providing a court martial for the trial of militia, held in mind the offences described in the preceding section, and to be submitted to a court martial. If the offences described in the fifth section, are to be tried by a court, constituted according to the provisions of the sixth section, then we should be led by the language of that section, to suppose, that congress had in contemplation a court formed of officers in actual service, since the provision that it should be composed "of militia officers only," would other-

wise be nugatory. This construction derives some aid from the act of 1814. By that act, courts martial for the trial of offences, such as that with which Mr. Meade is charged, are to be appointed according to the rules prescribed by the articles of war. The court in the present case, is not appointed according to those rules. Additional act of April 18, 1814, 2 Story's Laws, 1424, c. 140 [3 Stat. 134, c. 82]. The only argument which occurs to me against this reasoning, grows out of the inconvenience arising from trying delinquent militia-men, who remain at home, by a court martial, composed of officers in actual service. This inconvenience may be great, and well deserves the consideration of congress; but I doubt whether it is sufficient to justify a judge, in so construing a law, as to devolve on courts, sitting under the authority of the state, a power which, in its nature, belongs to the United States. If, however, this should be the proper construction, then the court must be constituted according to the laws of the state.

On examining the laws of Virginia, it appears, that no court martial can be called for the assessment of fines, or for the trial of privates, not in actual service. This duty is performed by courts of inquiry, and a second court must sit to receive the excuses of those against whom a previous court may have assessed fines, before the sentence becomes final, or can be executed. If it be supposed, that the act of congress has conferred the jurisdiction against delinquent militia privates on courts martial, constituted as those are for the trial of officers, still this court has proceeded in such a manner, that its sentence cannot be sustained. It is a principle of natural justice, which courts are never at liberty to dispense with, unless under the mandate of positive law, that no person shall be condemned unheard, or without an opportunity of being heard. There is no law authorizing courts martial to proceed against any person, without notice. Consequently, such proceeding is entirely unlawful. In the case of the courts of inquiry, sitting under the authority of the state, the practice has, I believe, prevailed, to proceed in the first instance, without notice; but this inconvenience is, in some degree remedied, by a second court, and I am by no means prepared for such a construction of the act, as would justify rendering the sentence final, without substantial notice. But, be this as it may, this is a court martial, not a court of inquiry, and no law exists, authorizing a court martial to proceed without notice, as in this case, the court appears to have proceeded. For these reasons, I consider its sentences as entirely nugatory, and do, therefore, direct the petitioner to be discharged from the custody of the marshal.

NOTE. This case, in some of its aspects, resembles very much the case of Houston v. Moore, 5 Wheat. [18 U. S.] 1. In that case, it was said by Mr. Justice Washington, in delivering the opinion of the court, that, although the "court martial," designated in the act of 1795, was in fair construction, to be considered a court martial, organized under the authority of the congress of the United States, yet, as the act had not withheld the power conferred by it from a court martial, organized under state authority, and as it was expressly conferred by a law of the state of Pennsylvania, the state court martial had a concurrent jurisdiction with the court, pointed out by the act of congress, Story, J., and another judge, dissenting. The latter judges held, that the state law of Pennsylvania, erecting a tribunal, and vesting it with jurisdiction to carry into effect an act of congress, was unconstitutional and void. See, also, Martin v. Mott, 12 Wheat. [25 U. S.] 19. (6 Pet. Cond. R. 410.)