The Board of Commissioners of Knox County v. Johnson.

Filed May 28, 1890.

124  145
124  535
124  556
124  145
134   67
124  145
145  358
124  145
154  390
154  391

No. 15,199.

THE BOARD OF COMMISSIONERS OF KNOX COUNTY v. JOHNSON.

COUNTY SUPERINTENDENT.—*Special Bond Required by School Book Law.— Failure to Give Within Time Limited.—Rejection of Bond by County Commissioners.—Appeal.*—On the 3d day of June, 1889, the plaintiff was elected county superintendent of schools of Knox county. On the 20th day of June, 1889, the board of commissioners declared the office vacant, because of the failure of the plaintiff to file the special bond required by section 10 of the act of March 2d, 1889. The plaintiff presented the special bond required by statute on August 12th, 1889, but it was rejected by the board. The plaintiff appealed from the decision of the board refusing to accept the bond, to the circuit court.

*Held,* that the rejection of the bond, since it operated to bring in question the plaintiff's right to the office, which was declared vacant, was a judicial act, and that, therefore, an appeal lay. *Board, etc.,*v. *State,* 61 Ind. 379, doubted and distinguished.

SAME.—*Vacancy of Office.—Question as to, Judicial.—Decision of Board of Commissioners.—Appeal.*—The question whether an office is or is not vacant, is intrinsically a judicial one; and where the board of commissioners assumes to declare a legislative office vacant, it assumes to exercise judicial power, and an appeal will lie from the decision.

SAME.—*Special Bond.— When Must be Filed.—Statute.*—Under section 10 of the act of 1889 all superintendents elected after the passage of the act must file a special bond within thirty days after their election; but superintendents elected prior to the taking effect of the statute are allowed thirty days to file such bond after the issuance of the Governor's proclamation.

SAME.—*Official Bond.—Filing of.—Statute, Directory.—Title to Office.—Non-Forfeiture of.*—The statutes, however, requiring official bonds to be filed within a designated time are directory, and not mandatory. Unless the

statute makes the filing of a bond within a limited time a condition precedent to the right to the office, the failure to file it within the time prescribed will not work a forfeiture of the right to the office, nor create a vacancy; and hence the mere failure by the superintendent elected after the passage of the act, and rightfully in office, to give the additional and special bond required, did not forfeit his title to the office, and authorize the office to be declared vacant.

SAME.—*Ouster of Officer.—Judicial Power.*—The power to oust an officer rightfully in office is essentially a judicial one, except where it is exercised by the appointing power.

SAME.—*Official Bond.—Doubt as to Time of Filing.—Ouster Without Hearing.*—Where an officer is rightfully in office, and there is a fair question as to whether the time within which he is directed to file a special bond in order to entitle him to continue in office begins to run from the date of his election, or upon the happening of a future event, and he files a bond within the time designated after such event does happen, a declaration that he has vacated the office, made without a hearing, does not oust him.

From the Knox Circuit Court.

W. A. Cullop and C. B. Kessinger, for appellant.

G. G. Reily, J. Wilhelm and W. F. Townsend, for appellee.

ELLIOTT, J.—On the 3d day of June, 1889, the appellee was elected county superintendent of the public schools of Knox county, for the term of two years, and on the 14th day of that month he duly qualified. On the 20th day of June, 1889, the board of commissioners declared the office vacant because of the failure of the appellee to file the special bond required by section 10 of the act of March 2d, 1889. Elliott's Supp., section 1298. The board on the same day appointed William H. Pennington to the office which it had declared vacant, but he did not accept the appointment. On the 12th day of August, 1889, the appellee presented the bond required by the statute to which we have referred, but the board refused to accept it. The appellee continued to discharge the duties of the office, but his claim for compensation was rejected. In September, 1889, the board of commissioners appointed Thomas Crosson to the office, and he accepted and qualified. The appellee appealed

from the decision of the board to the circuit court and judgment was there rendered in his favor. In the circuit court the appellant unsuccessfully moved to dismiss the appeal.

It is held by some of the courts that the refusal to accept the bond of a public officer is a ministerial act, and that approval may be coerced by mandamus. 2 Am. & Eng. Encyc. of Law, 466, h.

But there are many strongly reasoned cases which hold that the duty is a judicial and not a ministerial one. *State* v. *Dunnington*, 12 Md. 340; *Ex parte Harris*, 52 Ala. 87 (23 Am. R. 559); *Thompson* v. *Justices*, 3 Humph. 233; *Swan* v. *Gray*, 44 Miss. 393; *County of Bay* v. *Brock*, 44 Mich. 45. In the case of *Gulick* v. *New*, 14 Ind. 93, it was held that mandamus will lie to compel a county clerk to approve the bond of a sheriff. The decision in that case may be sustained upon the ground that the clerk was a ministerial officer, and that no appeal could be taken from his action in refusing to approve the bond. But where the officer is a judicial one, and there is a right of appeal, the question is essentially different. There is, however, a decision directly declaring that mandate will lie to compel a board of commissioners to approve the bond of a public officer or show cause for refusing to approve it. *Board, etc.*, v. *State, ex rel.*, 61 Ind. 379. No authorities are cited in support of the conclusion asserted in that case, nor are any reasons adduced, and we very much doubt the soundness of the doctrine asserted. We can not believe that where the tribunal is a judicial one, and a right of appeal is provided, mandamus is the appropriate remedy, but we feel bound to yield to the decision upon the rule of *stare decisis*. We are not, however, inclined to extend the rule declared in that case, and we deny its application to the present, for the reason that here the rejection of the bond operated to bring in question the right to the office held by the appellee, and the appellant did declare the office vacant. These facts, as we are satisfied, clearly distinguish the case from the case to

which we have referred, for much more than the simple approval or rejection of the bond is involved.

The question whether an office is or is not vacant is intrinsically a judicial one. *Stocking* v. *State*, 7 Ind. 326. In the case cited it was held that the Legislature could not, even by an express statute, create a vacancy in a constitutional office; and, certainly, if the Legislature cannot create a vacancy in a constitutional office, a board of commissioners can not by a ministerial or legislative act create a vacancy in an office created by the Legislature. If such a board assumes to declare a legislative office vacant, it assumes to exercise judicial power, and in all cases where its decisions are judicial there is a right of appeal. It is settled, beyond controversy, that where the act is a judicial one, and there is a remedy by appeal, mandamus will not lie.

There is no question before us as to the sufficiency of the sureties on the bond tendered to the appellant, for the bond was rejected upon other grounds. The ground upon which it was rejected directly involved the appellee's right to the office, and, therefore, a judicial question was presented for decision. We are, for this reason, not required to decide whether the decision of a board of commissioners in rejecting a bond can be reviewed in an action for mandate, by appeal, or otherwise.

There is no law requiring an officer who presents a bond for approval to file any claim or complaint. If he presents his bond, and it is rejected for the reasons which influenced the board in this instance, there is a judicial decision from which an appeal will lie.

The validity of the statute which controls this case was affirmed, upon full consideration, in the case of *State, ex rel.*, v. *Haworth*, 122 Ind. 462, so that the question remaining for decision is one of construction.

The contention of the appellant is that the failure of the appellee to give bond within thirty days after his election authorized a declaration that the office was vacant, and jus-

tified the decision refusing to approve the bond. The appellee's position upon this point is, that the execution of the bond within thirty days after the Governor issued his proclamation protected his title to the office.

As our statement of facts shows, the appellee was elected after the act of March 2d, 1889, went into force, and the question is, whether he lost his title to the office by his failure to give the special bond within thirty days after his election. If he did lose his title to the office, then he is in no situation to complain, for if he is not entitled to the office he has no cause of action.

The section of the statute which governs the case reads thus:

" It shall be the duty of the several county school superintendents of this State, within thirty days from the issuing of the proclamation by the Governor, as hereinbefore provided for, and of every county school superintendent hereafter elected, before he enters upon the discharge of his official duties, to enter into a special bond, with at least two freehold sureties of such county, payable to the State of Indiana, conditioned that they will faithfully and honestly perform all the duties required of them by this act, and account for and pay over all moneys that may come into their hands pursuant to the provisions of this act, in a penal sum which shall be equal in amount to one hundred dollars for every one thousand inhabitants of their respective counties as shown by the last census immediately preceding the giving of such bond, to be approved by the board of commissioners of their respective counties; and upon the failure of any county school superintendent to give such bond, his office shall become immediately vacant, and the board of commissioners of his county shall immediately appoint some competent and suitable person to fill such vacancy for the unexpired term of his office."

We can not agree with the appellee's counsel that the statute does not apply to superintendents elected after the law

went into force, but who had given the general bond at the time of their election.   We see no reason for attempting to change the words used in the statute, and they clearly direct that superintendents elected after its passage shall file a special bond within thirty days after their election.   It is only those who were elected prior to the time the statute took effect that are allowed thirty days after the Governor issues his proclamation to file a special bond.

But it by no means results from the construction we have given the statute that the appellee lost his title to the office to which he was elected and into which he had been legally inducted.   It is held by our own and other courts that statutes requiring official bonds to be filed within a designated time are directory, and not mandatory.   Upon this question the authorities are harmonious.   *State, etc.*, v. *Porter*, 7 Ind. 204; *Smith* v. *Cronkhite*, 8 Ind. 134; *Mayor, etc.*, v. *Geisel*, 19 Ind. 344; *Mayor, etc.*, v. *Wright*, 19 Ind. 346; *Speake* v. *United States*, 9 Cranch, 28; *People* v. *Holley*, 12 Wend. 481; *State, ex rel.*, v. *Churchill*, 41 Mo. 41; *State, ex rel.*, v. *County Court*, 44 Mo. 230; *Sprowl* v. *Lawrence*, 33 Ala. 674; *State, ex rel.*, v. *Ely*, 43 Ala. 568; *Kearney* v. *Andrews*, 2 Stock. Ch. 70; *State, ex rel.*, v. *Falconer*, 44 Ala. 696.

This rule is carried very far, for it is held, without substantial diversity of opinion, that unless the statute makes the filing of a bond within a limited time a condition precedent to the right to the office, the failure to file it within the time prescribed will not work a forfeiture of the right to the office nor create a vacancy.   In the case of *City of Chicago* v. *Gage*, 95 Ill. 593 (35 Am. Rep. 182), the statute provided that upon failure to file a bond within the time designated the person chosen shall " be deemed to have refused the office, and the same shall be filled by appointment," and it was held not to change the rule.   In *State* v. *Toomer*, 7 Rich. (Law) 216, the provision of the statute was that upon the failure of the person elected to file a bond within the time limited " his office shall be deemed abso-

lutely vacant, and shall be filled by election or appointment," and the court adjudged upon full consideration that title to the office was not lost. But we can not further quote from the adjudged cases, and we cite them without comment. *State* v. *Colvig*, 15 Oregon, 57 ; *State, ex rel.*, v. *Peck*, 30 La. Ann. 280 ; *State* v. *Ring*, 29 Minn. 78.

Under the established rule the mere failure of the appellee to give the additional and special bond required by the act of 1889 did not, it is clear, forfeit his title to the office, for his case is much stronger than those to which we have referred. That the case of the appellee is an unusually strong one is apparent when it is brought to mind that he was actually and rightfully in office, having duly qualified as the law directs. As he was rightfully in office, and had duly qualified, his failure to execute the special bond can not by any possibility be considered as a failure to perform a condition precedent to his right to the office. The utmost that can be said is that it was his duty, if he desired to continue in office, to file the special bond required by the act of 1889.

If the appellee has lost title to the office it must be for the reason that before he filed the special bond the board of commissioners had declared the office vacant. In order to determine the effect of this declaration it is necessary to consider the facts and to give some attention to the provisions of the act. The proclamation of the Governor was not issued until more than thirty days after the election of the appellee, and until the proclamation was issued no duty could be required of the superintendent which made a bond necessary. There is, indeed, reason for the contention of the appellee's counsel that no superintendent, whether elected before or after the passage of the act, was bound to give the special bond until the Governor's proclamation was issued, for, until that was done, there was no necessity for a bond. Section 6 of the act provides that, as soon as the contract for the furnishing of books shall be entered into, the Governor shall issue his proclamation announcing such

fact to the people of the State. While we feel compelled to yield to the explicit provisions of section 10 and hold that the direction contained in it applies to all superintendents elected after the passage of the act, we must also hold that there is a substantial and close question involved, for there is no little reason for holding that until the Governor issued his proclamation the school superintendents were not bound to proceed under the act. There was a real question as to when it was the duty of the appellee to execute a bond, and a question, too, upon which, not only laymen, but lawyers, might, in the utmost good faith, entertain opposite views.

The question comes to this: Can a person rightfully in office be ousted for the failure to give an additional and special bond within the time prescribed in a case where there is a substantial and close legal question as to when the time begins to run, without a day in court and a hearing?

It is to be remembered that the board of commissioners has no power to elect a county superintendent, nor any general power to appoint, so that the question is very different from one arising in a case where the removal is made by the appointing power. The power to oust an officer rightfully in office is essentially a judicial one, except where it is exercised by the appointing power. *State, ex rel.,* v. *Harrison,* 113 Ind. 434; *Page* v. *Hardin,* 8 B. Mon. 648; *Dullam* v. *Willson,* 53 Mich. 392. If it is judicial, then it seems clear that the officer is entitled to a hearing. In *Williams* v. *Bagot,* 3 B. & C. 786, BAYLEY, J., said: "It is contrary to common justice that a party should be concluded unheard." The question was fully considered in the case of *Queen* v. *Archbishop, etc.,* 1 El. & El. 545, and it was held that there could not be a removal without a hearing. This decision was made upon a statute providing that a curate whose license was revoked might "appeal to the archbishop of the province, who shall confirm or annul such revocation as shall seem to him proper." Lord Campbell said: "No doubt the archbishop acted most conscientiously, and with a sin-

cere desire to promote the interests of the church; but we all think he has taken an erroneous view of the law. He was bound to hear the appellant, and he has not heard him. It is one of the first principles of justice, that no man should be condemned without being heard." Delivering an opinion in a case involving the right to remove an officer, Chief Justice MARSHALL said: " It is a principle of natural justice, which courts are never at liberty to dispense with, unless under the mandate of positive law, that no person shall be condemned unheard, or without an opportunity of being heard." Meade v. Deputy Marshal, 1 Brock. 324.

In the case of Commonwealth, ex rel., v. Slifer, 25 Penn. St. 23, the doctrine was carried very far, perhaps too far, for it was there held that although the Governor had the power to appoint, still he could not remove an officer without giving him an opportunity to be heard. In the case of Biggs v. McBride, 17 Ore. 640, the question arose in a case where the Governor, acting under a statute, removed a railroad commissioner who held his office by virtue of a legislative enactment, and the court, in discussing the question whether the power to remove was executive or judicial, said : " But it is believed, under either view, and by whomsoever the power of removal for cause may be exercised, it must be done upon notice to the delinquent of the particular charges against him, and an opportunity be given him to be heard in his defence." Many other cases affirm the same general doctrine. State, ex rel., v. Hawkins, 44 Ohio St. 98 ; People, ex rel., v. Board of Fire Comm'rs, 72 N.Y.445; People, ex rel.,v. Mayor, 19 Hun, 441 ; State, ex rel., v. City of St. Louis, 90 Mo. 19 ; Willard's Appeal, 4 R. I. 595 ; Field v. Commonwealth, 32 Pa. St. 478; Foster v. Kansas, ex rel., 112 U. S. 201 ; Kennard v. Louisiana, ex rel., 92 U. S. 480. In the two cases last cited, the Supreme Court of the United States assumed jurisdiction, without hesitation or question, of cases involving the right to remove State officers, and examined the statutes and proceedings so far as to ascertain whether there was due process

of law under the fourteenth amendment; thus tacitly deciding that without a hearing an officer can not be removed.

Our conclusion is that where, as here, an officer is rightfully in office, and there is a fair question as to whether the time within which he is directed to file a special bond in order to entitle him to continue in office, begins to run from the date of his election, or upon the happening of a future event, and he does file a bond within the time designated after such event does happen, a declaration that he has vacated the office made without a hearing does not oust him.   We are far within the authorities in asserting this conclusion, but the case does not require that a broader or more general one should be asserted.

As the appellee had been duly elected and inducted into office, and as the only question that was presented by his failure to file the additional bond required by the act of 1889 was as to his right to continue in office, it was not necessary for him to show that he was eligible to the office. There is a radical difference between such a case as this and one wherein the plaintiff asserts a right to be admitted to an office.

Judgment affirmed.

Filed April 25, 1890; petition for a rehearing overruled May 28, 1890.