# THE PEOPLE OF THE TERRITORY OF UTAH, Ex Relatio WALTER MURPHY, COUNTY ATTORNEY, Appellant, v. JAMES G. McALLISTER, Respondent.

1. MUNICIPAL CORPORATIONS. — APPOINTMENT AND REMOVAL OF OFFICERS.—POWERS OF MAYOR AND COUNCIL.—The mayor of Salt Lake City sent a communication to the city council removing K. from the office of inspector of provisions and submitting the appointment of Y. to that office to them for confirmation. The council refusing to confirm Y., the mayor then submitted the appointment of M. " to fill the vacancy caused by the removal of K." The council thereupon passed a resolution by more than a two-thirds vote removing K. and declaring the office vacant, and then confirmed the appointment of M. No charges were preferred against K., nor was he afforded an opportunity to be heard. The charter of Salt Lake City (1 Comp. Laws 1888, p. 339, § 312), provides " there shall be appointed * * * inspectors * * * and such other officers and agents as the city council may, from time to time, direct and appoint." § 313 provides: " Every person elected or appointed to any office under the provisions of this act may be removed from such office by a vote of two-thirds of the city council; and no officer shall be removed except for cause nor unless furnished with the charges; * * * all officers appointed by the council may be removed at any time by vote, at discretion of two-thirds of said council, and any officer may be suspended until the disposition of charges preferred against him. Session Laws 1892, ch. 18, § 3, provides, " that hereafter the mayor shall appoint by and with the advice and consent of the council, all officers who are now made appointive by said council," and that all laws inconsistent herewith are repealed. *Held, First,* that the power of removal of appointive officers does not exist in the mayor as incident to his power of appointment. *Second,* that the power of removal of appointive officers is vested in the city council, but cannot be exercised at its mere discretion without preferring charges and affording an opportunity to be heard.

2. ID.—POWER OF REMOVAL INCIDENT TO POWER OF APPOINTMENT
RESTRICTED BY LAW.—The power of removal of appointive
officers exists as a sound and necessary rule as incident to the
power of appointment unless restricted by constitutional pro-
visions or statutory regulations.

3. POWER OF APPOINTMENT AND REMOVAL.—RIGHTFUL SUBJECT OF
LEGISLATION.—The legislature may place the power of appoint-
ment in one person or body of persons and the power of
removal in another person or body of persons, and this is a
rightful subject of legislation.

4. STATUTORY CONSTRUCTION.—POWER OF REMOVAL.—REPEALS —
Where the provisions of a former statute place the power of
removal of appointive officers in a certain body of persons,
and also provides how that power may be exercised, and a
subsequent statute takes away that power and places it in the
hands of a single individual without providing how it may be
exercised, but repealing all laws inconsistent therewith. *Held*,
that the former statute is repealed by the latter only to the
extent of the person or body of persons exercising the power,
and that the manner in which the power is to be exercised
remains the same.

5. ID.—EXPRESS REPEALS.—IMPLIED REPEALS.—Where the provis-
ions of a subsequent statute expressly repeal certain provisions
of a former statute, and also provides that all laws inconsist-
ent therewith are repealed, that construction will be adopted
which will limit the repeal by implication to those provisions
only of the former statute which are inconsistent or repugnant
to the provisions of the latter.

6. PURVIEW OF STATUTES.—STATUTORY CONSTRUCTION.—REPEALS
BY IMPLICATION NOT FAVORED.—Where there is a difference in
the purview of two statutes relating to the same subject, the
former is not repealed by the latter in the absence of a re-
pealing clause, and both statutes will be construed together
and given effect if possible; but if their provisions are incon-
sistent or repugnant, the former will be repealed by the latter
only to the extent of such inconsistency or repugnancy, but
no further.

(No. 470.   Decided July 27, 1894.   37 P. R. 578.)

APPEAL from the District Court of the Third Judicial
District, Hon. S. A. Merritt, *Judge.*

Action in the nature of a *quo warranto,* at the relation of Walter Murphy, county attorney, on the complaint of Alma S. Kendall against James G. McAllister to test the right of the latter to hold the office of inspector of provisions for Salt Lake City. From a judgment sustaining a demurrer to the complaint and dismissing the same, plaintiff appeals. *Reversed.*

*Mr. N. W. Sonnedecker* and *Mr. Frank Pierce,* for appellant.

Appellant contends that neither the mayor nor the city council can amove the inspector of provisions of Salt Lake City, Utah, during the term for which he is appointed unless charges are preferred, and, after trial, two-thirds of the council vote in favor of the amotion. The law of 1892 gave the mayor the power of appointment, by and with the advice and consent of the council, all officers theretofore made appointive by the city council, but the power of removal remains unchanged. It is certainly not inconsistent with the law granting the power of appointment that the power of removal should be in the hands of another power. Repeals by implication are not favored, and the intention to repeal will not be presumed, nor the effect of a repeal admitted, unless the inconsistency is unavoidable, and only to the extent of the repugnance. Suth. on Stat. Con. § 138. The enactment of a statute giving the mayor power to appoint, with the repeal of inconsistent laws, does not repeal the law on removals and impliedly give such power to the mayor. 1 Dill. Mun. Corp. §§ 89–91; Cooley, Con. Lim. 234; 15 Am. & Eng. Enc. of Law, 1040; Suth. Stat. Con. § 380.

Granting that the power of removal might be vested impliedly in the mayor, he would still be compelled to remove in no other way than that prescribed in the

charter, and charges must be preferred and a hearing granted. And this is true whether the power of removal be exercised by the mayor or the council or both. Mechem on Public Officers, § 454; *Dullam* v. *Wilson,* 53 Mich. 392; *Foster* v. *Kansas,* 112 U. S. 201; *Kennard* v. *Louisiana,* 92 U. S. 480. It is well settled that municipal corporations can exercise only such powers as are expressly granted, and that a mode of procedure marked out must be strictly followed, and whatever is not given expressly or as a necessary means to the execution of expressly given powers is withheld. Where the tenure of office is not fixed by law and no other provision is made for removals, the power exists as incident to the power of appointment; but this power of arbitrary removal is limited to these circumstances. Mechem on Public Officers, § 445; *Ex parte Hennen,* 13 Pet. 230. The appointment and confirmation of McAllister has no effect whatever in the matter, for the power of appointment only exists where there is a vacancy to fill, and an appointment under any other circumstances is *ultra vires,* and therefore void, and no act of the appointing power can thereafter give it validity. 19 Am. & Eng. Enc. 430; Mechem on Public Officers, § 113; *State* v. *Harrison,* 113 Ind. 23; *People* v. *Tilton,* 37 Cal. 614. The appointment of Kendall to the office of inspector of provisions exhausted the power of appointment for the term of two years unless he was lawfully removed, and until such removal there could be no vacancy. Mechem on Public Officers, § 113; 19 Am. & Eng. Enc. 426; *Thomas* v. *Burrows,* 23 Miss. 550; S. C. 57 Am. Dec. 154; *Johnson* v. *Wilson,* 2 N. H. 202; S. C. 9 Am. Dec. 50.

*Mr. E. D. Hoge,* City Attorney (*Mr. R. N. Baskin,* of counsel), for respondent.

The appointing power necessarily carries with it the

power to remove and is an incident thereto. *Ex parte Hennan*, 13 Pet. 256; *Kinney* v. *Perry*, 24 Tex. 258. The statute giving the mayor power to appoint officers with the advice and consent of the council, is silent on the subject of the tenure of appointive officers, and vests in the mayor the power to remove at his pleasure. This conclusion is fully sustained in *Ex parte Hennan, supra*. All offices, the tenure of which is not fixed by the constitution or limited by law mnst be held during good behavior, during the life of the incumbent, or at the will or discretion of some department of the government, and subject to removal at pleasure. The power of the president to remove officers appointed with the concurrence of the senate, was a subject much disputed and upon which there was a great diversity of opinion in the early history of the government. The question was whether the removal was to be by the president alone or with the concurrence of the senate, both constituting the appointing power, but it was very early adopted as the practical construction of the constitution, that this power was vested in the president alone. It inevitably follows that the law of 1892, which, in the very terms of the clause of the constitution referred to, gives the mayor the power to appoint certain officers by and with the advice and consent of the council; also by force of its express terms, gives the mayor the power at will to remove such officers. The appointment works a removal, as said in *Ex parte Hennan, supra*, p. 261. "The power vested in the court was a continuing power, and the mere appointment of a successor would *per se*, be a removal of the prior incumbent, so far at least as his rights were concerned." The power to appoint from necessity carries with it the power to remove, and this doctrine is sustained by the highest judicial authority. *People* v. *Fire Commissioner*, 73 N. Y. 441; Mechem Pub. Officers, § 445, and cases cited in notes. Considering the relations which the

territory bears to the general government, it was the evident intention of the legislature to make the system of municipal appointments to inferior offices correspond with federal appointments under the constitution.

Bartch, J.:

This is an action in the nature of *quo warranto,* brought under chapter 5, 1 Comp. Laws Utah 1888, p. 337, to test the right of the respondent to hold the office of inspector of provisions for Salt Lake City, and to discharge the duties and receive the emoluments thereof. The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. After arguments of counsel the demurrer was sustained, and, the plaintiff electing to stand by his complaint, judgment was entered in favor of the defendant. From this judgment the plaintiff appealed, assigning as error the sustaining of the demurrer and the entering of judgment for the defendant. Among other facts stated in the complaint, it appears that on the 18th day of November, 1892, the appellant, Alma S. Kendall, was appointed to the office of inspector of provisions in and for Salt Lake City. Pursuant to his appointment he qualified, was duly commissioned, and then entered upon the discharge of the duties of his office, and ever since has held the same and performed the duties thereof. It further appears that on the 24th day of November, 1893, while the appellant was performing the duties of such inspector, Hon. R. N. Baskin, as mayor of Salt Lake City, submitted to the city council a writing which reads as follows:

"From the mayor. Gentlemen: I hereby appoint Mr. A. O. Young to the office of inspector of provisions for the city, in place of A. S. Kendall, who is hereby removed, and submit the appointment to you for confirmation. Respectfully, R. N. Baskin, mayor."

The council refusing to confirm the appointment of Young, the mayor, on the 2d day of January, 1894, in a similar way, and without specifying any cause for the removal of Kendall, submitted the appointment of James G. McAllister "to fill the vacancy caused by the removal of A. S. Kendall." It appears that this appointment was referred to the committee on sanitary rules and quarantine, and it afterwards reported that they had carefully investigated the matter, and recommended that the appointment of McAllister be confirmed by the council. Thereupon, the council, on the 16th day of January, 1894, adopted the following resolution: "Resolved, that the office of inspector of provisions be and the same is hereby declared vacant, and that Mr. Kendall be and he is removed." The council then confirmed the appointment of McAllister. Thereupon, Kendall presented his bill for services, and was refused payment thereof, and his services were no longer recognized by the council. Such are the facts set out in the complaint, so far as they appear necessary to the decision of this case. Both parties to this action have argued the case on its merits, without raising any objection to the form of the pleadings, and it will therefore be considered on the questions presented in the briefs of counsel.

The first question presented is whether the mayor of Salt Lake City has the power to remove an appointive officer. The statute law for appointment and removal of city officers in Salt Lake City, so far as material and applicable to this question, is as follows: "There shall be appointed  *  *  *  inspectors  *  *  *  and such other officers and agents as the city council may from time to time direct and appoint." Comp. Laws Utah 1888, p. 339, § 312. Section 313 provides: "Every person elected or appointed to any office under the provisions of this act, may be removed from such office by a

vote of two-thirds of the city council; and no officer shall be removed except for cause, nor unless furnished with the charges; and the council shall have power to compel the attendance of witnesses and the production of papers when necessary for the purpose of such trial, and shall proceed, within ten days, to hear and determine upon the merits of the case; and if such officer shall neglect to appear and answer such charges, then the council may declare the office vacant. All officers appointed by the council may be removed at any time by vote, at discretion of two-thirds of said council, and any officer may be suspended until the disposition of charges preferred against him." Section 314 provides, "Whenever any vacancy shall happen by the death, resignation, or removal of any officer, such vacancy may be filled by the city council," and then provides how certain officers shall qualify before entering upon the discharge of their duties. Section 353 provides that the council shall have power "to regulate the inspection of tobacco, also of flour, meal, pork, beef, and other provisions, and salt to be sold in barrels, hogsheads or other vessels," and section 356 empowers the council to appoint inspectors, and regulate their duties, and prescribe their fees. Section 400 reads as follows: "The mayor of Salt Lake City shall have power to appoint, by and with the advice and consent of the city council, the regular police of said city, to the number which may from time to time be prescribed by the city council, and remove the same at pleasure," etc.

These several sections are found in the charter of Salt Lake City, and at the time of the passage of the general act providing for the incorporation of cities, approved March 8, 1888, they comprised the law relating to the appointment and removal of city officers. Sections 312 and 356, above quoted, confer upon the city council the power to appoint certain city officers, including an inspector

of provisions; and this power seems to exist under either section, but more specifically under the latter, so far as inspector of provisions is concerned, for that section refers to, and must be read in connection with, section 353, which confers the power to regulate the inspection of provisions upon the council. Section 313 vests the power of removal in the city council, and provides how a removal may be effected; and section 314 empowers the council to fill any vacancy caused by the death, resignation, or removal of any officer. Under the sections thus far considered, there is vested in the mayor absolutely no power either of appointment or of removal. Nor does a careful examination of the laws relating to this subject reveal any such power vested in the mayor from January 18, 1851, when the first charter was granted to Salt Lake City, to March 13, 1884, when, for the first time in the history of this legislation, there was vested in the mayor power to appoint, with the concurrence of the council, the regular police of the city, and "to remove the same at pleasure," as is provided in section 400, above quoted. As to all other officers, except the police, the power of the council remained undisturbed.

While, subsequent to the passage of the act of 1884, there were various amendments made to the charter, yet it will be observed, upon examination of the amendments, that there was no further material change made in the power of appointment and removal of officers until the passage of the act approved February 27, 1892. It is evident from the history of legislation upon the subject under consideration that, until the passage of the act of 1892, it was always the intention and policy of the legislature to vest the appointment and removal of officers in Salt Lake City in the city council. The only departure appears to be the act of 1884, and this is limited to police. The law of 1892, in some respects, made material changes in the

powers previously conferred upon the mayor and council, for the mayor was no longer constituted a member and chairman, but was clothed with the veto power, and the council was empowered to select its president from among its own members. It seems the intention was to abrogate the close relation which had hitherto existed between the council and the mayor. The act further provides in section 3, c. 18 (found in Sess. Laws 1892, p. 17), as follows: " That hereafter the mayor shall appoint, by and with the advice and consent of the council, all officers who are now made appointive by the said council." This section clearly abridges the power of the council, by vesting in the mayor the right to appoint, with the concurrence of the council, all officers whose appointment was hitherto within the power of the council. This include the inspector of provisions.

It is insisted by counsel for respondent, that the power of appointment thus conferred upon the mayor necessarily carries with it, as incidental thereto, the power to remove, and that it is a continuing power, which may be exercised at the pleasure of the mayor. The legislative authority is not questioned in this case, and assuming, therefore, that this is a rightful subject of legislation, which it clearly is, then it is within the province of the legislature to place the power of appointment in one person, or in a body of persons, and so likewise as to the power of removal. The legislature, in section 313, above quoted, has expressly authorized the council to remove all appointive officers; and this authority still continues in the council, unless it was repealed by the act of 1892. This act does not in express terms repeal any of the provisions of section 313. It simply repeals such laws as are inconsistent with its provisions, and it is difficult to see wherein any provision of section 313 is inconsistent with the law of 1892. Nor is any provision of the former law repugnant

to the latter. When the two laws are read together their meaning appears perfectly clear, and they present no ambiguity. Upon what principle of construction, then, does the latter law repeal the former? There is nothing in its provisions to indicate that such was the intention of the legislature, and, if it had intended such a result, it would have been easy to effect it by express enactment or plain inference. Nor can such legislative intent be gathered from the history of legislation upon this subject, because the power of removal was uniformly vested in the council, except in the single instance of the police, by the act of 1884. Both statutes must be construed together and given effect, if possible, for a repeal by implication is not favored in law. Even where some of the provisions of a former statute are inconsistent with or repugnant to a later one, the repeal by implication will operate only to the extent of such inconsistency or repugnancy.

When, as in the case at bar, there is a difference in the purview of two statutes, though relating to the same subject, the former is not repealed by the latter, in the absence of a repealing clause; and the legislature, when enacting the later law, is presumed to have knowledge of all former laws relating to the same subject. The doctrine of repeal by implication proceeds on the ground that it was the intention of the legislature, and such intention must be manifest before the repeal can become effectual. Suth. St. Const. §§ 138, 160; *U. S.* v. *Claflin,* 97 U. S. 546; *Hudson Furniture Co.* v. *Freed Furniture & Carpet Co.* (Utah), 36 Pac. 132. Nor can the position of counsel for respondent be sustained upon any principle of natural justice, for under such a power vested in the mayor the proceeding in case of removal would be *ex parte,* as well as summary,—without notice or opportunity to be heard, —and yet it is contrary to common justice that a party should be condemned unheard. Nor can it be sustained

on consideration of the highest interest of the municipality, for it would be placing an unlimited power in the hands of one man, which would enable him, at his mere will, partisan zeal, or caprice, to remove every appointive officer in the city, regardless of the rights and safety of the people. Such a power is despotic in its nature, and can only be conferred by legislative authority, and will not be aided by judicial construction. While, in the case at bar, the power of removal may have been exercised under the apprehension that it was demanded in the interests of the public service, yet we are of the opinion that such power did not exist in the mayor, as incident to his power of appointment, because the power of removal is, by statute, conferred upon the council.

Counsel for respondent seem to rely on the case of *Ex parte Hennen*, 13 Pet. 256, as sustaining their position. In that case the petitioner was appointed clerk of the District Court of the United States for the Eastern District of Louisiana by the judge of the court, and had served a number of years as such clerk, with satisfaction to the court, when he was removed by the successor of the judge who had appointed him, and another party appointed in his place Under a certain provision of the constitution of the United States, congress conferred the power to appoint the clerks of those courts upon the judges thereof, but was silent as to the power of removal and tenure of office, and the constitution likewise is silent as to the power of removal and tenure of office of clerks. After hearing the case of an application for a rule to show cause why a *mandamus* should not issue against the judge to show cause why he should not restore the petitioner to the office, the court was of the opinion that the power to appoint a clerk was vested exclusively in the District Court, and the office was held at the discretion of the court, and denied the rule prayed for. Mr. Justice Thompson, delivering the

opinion of the court, said: "It cannot for a moment be admitted that it was the intention of the constitution that those offices which are denominated 'inferior offices' should be held during life; and, if removable at pleasure, by whom is such removal to be made? In the absence of all constitutional provision or statutory regulation, it would seem to be a sound and necessary rule to consider the power of removal as incident to the power of appointment." The court clearly recognizes "statutory regulations," and the plain inference is that in a case where the power of removal is fixed by law the doctrine of removal, as incident to the power of appointment, does not apply. The other cases cited by counsel for respondent are to the same effect.

The remaining question to be considered is whether the city council can remove appointive officers at its mere discretion, without preferring charges, and affording an opportunity to be heard. The appellant was so removed. To determine this question, it again becomes necessary to refer to the statutes which have a bearing on the subject. The first clause of section 313, above referred to, provides that, "every person elected or appointed to any office * * * may be removed by a vote of two-thirds of the city council," and that "no officer shall be removed except for cause nor unless furnished with the charges; and shall have an opportunity of being heard in his defense." The latter part of the section provides that "all officers appointed by the council may be removed at any time by vote, at discretion of two-thirds of said council." Counsel for respondent claim that under this last clause the officer in question was effectually removed, and this even though the mayor had no power of removal. It is contended that this clause had the same force and effect as if it were a separate section. The question is,

what is the meaning of the word " discretion," as used in the section? It will be noticed that in the first paragraph the word " discretion " is not used after the word " vote," as in the latter, but other words are used to indicate the procedure to effect a removal. In the latter the word " discretion " is employed, without any other words to determine such procedure. To impute to this word its ordinary meaning—that of unrestrained exercise of choice or will—is to create a conflict between the two parts of the same section. In the construction of statutes, to avoid such conflict or repugnance, the meaning of words may be expanded, and likewise the meaning of words may be restricted. The intent of the legislature must prevail, when that can be gathered from the statute, and all parts of the statute must be given effect, if possible. Suth. St. Const. §§ 218, 219. It is evident that the discretion here intended is to be exercised after a hearing for cause, as provided in the first part of the section.

The legislature has further provided to the same effect in subdivision 87 of section 1755, Comp. Laws Utah 1888, which empowers the council " to appoint police and watchmen and to define their powers and duties, and to remove all officers of the city for misconduct, and to provide for filling such vacancies as may occur in any elective office, and to create any office that may he deemed necessary for the good government of the city; to regulate and prescribe the powers, duties and compensation of all officers of the city not herein provided for." Under this section the council has the right to remove only for misconduct, and this applies to all officers of the city. This law is a part of the general incorporation act above mentioned, and amends the city charter, which is further amended by section 1764, which reads as follows: " The appointive officers of the city shall hold their respective offices for two years, unless sooner removed by the city council."

There are several other provisions of statutes which might be referred to as having some bearing on this case, but they are merely cumulative, and therefore not necessary to this decision. The last section quoted fixes the terms of office of all appointive officers, and when this is considered in connection with the other sections which confer the power of removal upon the council, and define the manner in which it may be effected, it seems difficult to conceive how an appointive officer can be summarily removed in Salt Lake City, regardless of any defense he may have as against the attack upon his name and fame; and yet the process for removal under the statute is essentially of a judicial character, for the law says no officer shall be removed except for cause or misconduct, nor without charges preferred, and opportunity given for defense.

How, then, can the council assume to remove arbitrarily, at mere pleasure or will? It is not sufficient to say that cause exists. If the process of removal is judicial, it seems clear that the officer has a right to be heard in his defense, to face his accusers, and then, when he has had this privilege, and has accepted the opportunity, and been heard, or has refused such hearing, the council may, in the exercise of its discretion, remove him or not, as the evidence may warrant. It is demanded by the first principle of justice that no person shall be condemned without an opportunity to be heard, and this principle courts have no right to disregard, unless in obedience to the mandate of positive law. The law makes the council the judge in such cases, and ordinarily its opinion or decision is conclusive, but it cannot dispense with the proceeding prescribed by statute. The mere fact that in the opinion of the council an officer has been guilty of misconduct in office, or that good cause for his removal exists, will not justify the exercise of its discretion in a summary way. The officer must be furnished with specific charges, and

then have an opportunity to call witnesses in explanation of his conduct or acts. His tenure of office is fixed by law, and he is entitled to the emoluments thereof. By his appointment he acquires rights of which he cannot be deprived, except by proceeding had in strict compliance with the statute. It is true he has no right of property which could be the subject of conveyance, yet he has a right or title to the office and its emoluments, which courts will recognize as a valuable interest or privilege entitled to protection. The conditions of removal are express, and clearly set forth in the statutes, and cannot be disregarded as immaterial. A removal for cause is a judicial act which affects the reputation and rights of the accused. It is in law a punishment for crime, and the proceeding provided by statute can no more be dispensed with in such a case than a court can disregard the statutory provisions in the trial of a cause where a person is charged with the commission of an offense.

From an examination of the history of judicial proceedings, it will be seen that officers clothed with the power of removal for cause have frequently attempted its exercise at pleasure, *ex parte,* and such examination will also show how futile have been their efforts. Mechem, in his treatise on the Law of Public Offices and Officers, in section 454, after referring to the power of removal, where the office is held at the pleasure of the appointing power, says: " But on the other hand, where the appointment or election is made for a definite term, or during good behavior, and the removal is to be for cause, it is now clearly established by the great weight of authority that the power of removal cannot, except by clear statutory authority, be exercised without notice and hearing, but that the existence of the cause for which the power is to be exercised must first be determined, after notice has been given to the officer of the charges made against him, and he has been

given an opportunity to be heard in his defense." In the same treatise, in section 455, the author says: "Proceedings for the removal of an officer for cause are judicial in their nature, and must be had before tribunals clothed with judicial powers. The fit and appropriate tribunal, therefore, in ordinary cases, is the court of law; but the judicial power may be, and often is, expressly conferred upon the governor, mayor, or other officer or board having the power of removal. The proceeding being thus a judicial one, the power must be exercised under the same limitations, precautions, and sanctions as in other judicial proceedings."

In *Meade* v. *Deputy Marshal,* 1 Brock. 324, Fed. Cas. No. 9,372, which was a case involving the right to remove an officer, Chief Justice Marshall said: "It is a principle of natural justice, which courts are never at liberty to dispense with, unless under mandate of positive law, that no person shall be condemned unheard, or without an opportunity of being heard." *Ex parte Ramshay,* 18 Adol. & E. (N. S.) 190, was a case where the Earl of Carlisle, chancellor of the duchy of Lancaster, removed a county judge under a statute which made it lawful for the chancellor to remove such an officer, "if he shall think fit, to remove for inability or misbehavior any such judge." Lord Campbell, C. J., delivering the judgment of the court, said: "The chancellor has authority to remove a judge of a county court only on the implied condition, prescribed by the principles of eternal justice, that he hears the party accused. He cannot legally act upon such an occasion without some evidence being adduced to support the charges, and he has no authority to remove for matters unconnected with inability or misbehavior in the office of county court judge."

*The Queen* v. *Archbishop of Canterbury,* 1 El. & El. 545, was a proceeding by *mandamus* under a statute which

enacted that a curate whose license had been revoked by
the bishop might, within one month after service upon
him of such revocation, appeal to the archbishop of the
province, "who shall confirm or annul such revocation as
to him shall appear just and proper." A curate's license
having been revoked, he appealed to the archbishop, who,
without giving the appellant an opportunity to be heard,
confirmed the revocation. Lord Campbell, referring to the
archbishop, said: "He was bound to hear the appellant,
and he has not heard him. It is one of the first prin-
ciples of justice that no man should be condemned with-
out being heard. We do not say whether the archbishop's
decision was right or wrong. We say only that he has
not heard the petitioner."

In *Page* v. *Hardin*, 8 B. Mon. 648, the supreme court
'of Kentucky said: "The secretary being removable for
breach of good behavior only, the ascertainment of the
breach must precede the removal. In other words, the
officer must be convicted of misbehavior in office. And
we shall not argue to prove that, in a government of laws,
a conviction whereby an individual may be deprived of
valuable rights and interests, and may, moreover, be seri-
ously affected in his good fame and standing, implies a
charge and trial and judgment, with the opportunity of
defense and proof. The law, too, prescribes the duties
and tenure of the office, and thus furnishes a rule for the
decision of the question involved. Such a proceeding for
the ascertainment of fact and law, involving legal right,
and resulting in a decision which may terminate the right,
is essentially judicial, and has been so considered here and
elsewhere." In that case the secretary was an appointive
officer, and was removed by the governor without notice
and hearing.

In *Dullam* v. *Willson*, 53 Mich. 392, 19 N. W. 112,
Justice Champlin, delivering the opinion of the court, said:

" There must be charges specifying the particulars in which the officer is subject to removal. It is not sufficient to follow the language of the constitution. The officer is entitled to know the particular acts of neglect of duty, or corrupt conduct, or other act relied upon as constituting malfeasance or misfeasance in office; and he is entitled to a reasonable notice of the time and place when and where an opportunity will be given him for a hearing, and he has a right to produce proof upon such hearing." In *Com.* v. *Slifer,* 25 Pa. St. 23, Chief Justice Lewis said: " We are unwilling to believe that the governor intended, without cause, to remove an officer appointed for a term of years, before the term had expired. That he possessed the power of removal is conceded, but the power is to be exercised upon cause shown. It exists only where ' the officer fails and neglects faithfully to perform the duties of the office.' It is true that the executive is made the judge, and that his ' opinion' or judgment is conclusive, so far as relates to the question of removal. But that judgment is not to be pronounced without notice, without any charge or specification, and without any opportunity given to the officer to make his defense." Dill. Mun. Corp. §§ 253, 255; *Board* v. *Johnson,* 124 Ind. 145, 24 N. E. 148; *State* v. *Board of Police Com'rs,* 88 Mo. 144; *Foster* v. *Kansas,* 112 U. S. 201, 5 Sup. Ct. 8, 97; *Andrews* v. *King,* 77 Me. 224; *Murdock* v. *Trustees of Phillips Academy,* 12 Pick. 243; *Reg.* v. *Owen,* 15 Adol. & E. (N. S.) 476.

The law appears to be well settled by the great weight of authority, that where, as in the case at bar, the power of removal exists only for cause, and its exercise is regulated by statute, an officer who is rightfully in office cannot be removed without an opportunity to be heard in his defense, upon charges preferred. Our conclusion is that the mayor had no power to remove the appellant,

and that the city council, having the power, failed to exercise it lawfully. The resolution passed by the council was, in legal contemplation, void, and ineffectual to deprive the appellant of his right to the office. Not being legally removed, he had a right to discharge the duties and receive the emoluments thereof, until lawfully removed, or until the expiration of the term, as provided by statute. It follows that there was no vacancy in the office in question at the time of the appointment of the respondent, and that, therefore, his appointment was void, for the power to appoint only exists where there is a vacancy. Mechem, Pub. Off. § 113. We think the court below erred in sustaining the demurrer. The judgment is reversed, and cause is remanded for further proceeding in accordance herewith.

MINER and SMITH, JJ., concur.