## B. L. FOWLKES v. CITY OF KNOXVILLE.

Western Section. February 9, 1929.

Petition for Certiorari denied by Supreme Court, May 25, 1929.

Frank P. Bowen, of Knoxville, for plaintiff in error.
Frank Montgomery, of Knoxville, for defendant in error.

HEISKELL, J.  Plaintiff, B. L. Fowlkes, filed a petition for certiorari in the circuit court of Knox county, seeking to review the action of the City Manager of the City of Knoxville, suspending him for six months from service as a policeman of said city.

B. L. Fowlkes was tried before the Director of Public Safety of the City of Knoxville on the charge of conduct unbecoming a police officer in circulating a false report against a superior officer of the force.  After hearing the matter and taking it under advisement for sixteen days, the Director of Public Safety rendered a decision sustaining the charges and dismissing said Fowlkes from the police force of the City of Knoxville.  From the action of the Director of Public Safety, an appeal was prosecuted to the City Manager of said city, who after considering the matter, modified the decision of the Director of Public Safety and ordered that Fowlkes be suspended for a period of six months from service on said police force.

Thereupon, Fowlkes filed his petition for certiorari, insisting that he was entitled to have the circuit court review and reverse the action of the City Manager for two reasons, because the decision of the Director of Public Safety was required by the charter of the city to be rendered in five days after the hearing and was therefore void, not having been delivered for sixteen days, and because there was no evidence to support the decision of the Director of Public Safety.

The defense of the city to this petition was that petitioner had had a fair trial before the Director of Public Safety and again on appeal to the City Manager; that these proceedings were had under the Civil Service Act relating to the City of Knoxville, which provides that the judgment of said City Manager shall be "final in all things" on the trial of these civil service cases.  The court below dismissed the petition for certiorari and the petitioner, B. L. Fowlkes has appealed and assigned errors.  The assignments merely raise the two questions indicated above.

Counsel for appellee insist that the case is controlled by Nashville v. Martin, 156 Tenn., 443.  That case held that a policeman had no constitutional right to serve the city except upon the terms and conditions provided by charter and as the charter provided that the decision of the Civil Service and Pension Board should be final as to the facts, therefore said finding as to the facts could not be reviewed on certiorari in the circuit court.  The court held that this pro-

vision of the charter of Nashville did not contravene any constitutional right of the policeman in that case. If it was necessary for us to decide that the Knoxville charter which provides that the decision of the City Manager shall be final in all things, did not interfere with any constitutional right of plaintiff in error in the present case, a constitutional question would be involved which would defeat the jurisdiction of this court and make it necessary to transfer the case to the Supreme Court, but if the case can be decided upon other grounds entirely independent of the question of the constitutionality of said provision of the Knoxville charter, then the case may be disposed of by this court.

The contentions of plaintiff in error are: (1) That there is no evidence to sustain the finding of the Director of Public Safety or the City Manager, and (2) That the decision of the Director of Public Safety was void because not rendered within five days after the hearing. We think there can be no question but that the decisions of both officials were supported not only by some evidence, but by a preponderance of the proof. The only basis for the contention that there is no evidence to sustain the decision, is that the witness against Fowlkes, Helen Dyer, was a woman of lewd character. We cannot agree that this alone destroys entirely the testimony of a witness. But besides, she is to some extent corroborated by other testimony and by the equivocal testimony of Fowlkes himself.

The charge against Fowlkes was that he procured Helen Dyer to tell officer McLin that she had seen Captain Keisling with Mrs. McLin on four different occasions when they were by themselves in an automobile. Keisling had moved Fowlkes from a beat in the heart of the city to one in Oakwood. Fowlkes considered this an injustice and was anxious to be back on his old beat. He said this not only to Helen Dyer but to several of his brother officers and said that he would be back on his old beat again in a month or so. Helen Dyer admitted that what she said to McLin about his wife and Keisling was untrue and was said only because Fowlkes had asked her and that Fowlkes had promised to protect her if she got into any trouble.

One of the things Fowlkes was accused of telling this woman to tell, was that she had seen Captain Keisling and Mrs. McLin in a car on the Ball Camp Pike and that their car got stuck in the mud and had to be pulled out by a service car, and the proof shows he asked others if a car could get stuck in the mud on that road. With reference to this testimony against him, Fowlkes is cross-examined and says:

"Q. Did you tell Mr. Byrd or did you ask Mr. Byrd if the Ball Camp Pike was a pike you could get stuck up on? A. No I don't think I made that remark to Mr. Byrd.

"Q. Did you have a talk with Mr. Reagan about this matter? A. Well, Reagan said so.

"Q. Did you tell him you wanted to get your beat back the first of the month? A. Well, somebody told me when this was up they thought maybe I would get the beat back, yes.

"Q. I will ask you if you told Mr. Reagan that you would get your beat back the first of the month? A. He says I did.

"Q. I will ask you whether you told him or not? A. Well,

"Q. Answer that yes or no. A. Possibly I told him I thought so."

The positive testimony of Helen Dyer although she is admitted to be a woman of lewd character, corroborated by testimony of others as to what Fowlkes said to them, taken in connection with the testimony of Fowlkes himself, certainly constitutes evidence to support the decision against him, even if a preponderance be required.

Again, we think there was no error in the holding that the decision of the Director of Public Safety was not void because rendered after the five days specified by the charter. Kyle v. Goulette, Opinion of this court, is cited to sustain the contention of appellant. That case was tried by the court without a jury. It was heard on October 18th and 19th 1926, and the September term did not end until January 1, 1927. The case was not decided until April 8, 1927, at the January term. This court held in an opinion by Judge Snodgrass that the case must be treated as if it had not been tried and was reversed and remanded to be so placed on the docket of the court for trial. Code section 6057 A 1, required the judgment in that case to be entered at the September term. The same would no doubt be required by rules of practice without any statute. There is certainly room for difference of opinion as to whether that case should control one like the present in which the quasi tribunal, the Director of Public Safety, had no terms of court and no rules in regard thereto to comply with. The following authorities are cited by counsel for the City of Knoxville to support the contention that the time prescribed within which a decision should be rendered is merely directory:

"Where a statute specifies the time within which a public officer is to perform an official act regarding the rights and duties of others, it will be considered directory merely, unless the nature of the act to be performed, or the language used by the legislature, shows that the designation of the time was intended as a limitation of the power of the officer. Wampler v. State ex rel. Alexander, 38 L. R. A. 829, 148 Ind. 557, 47 N. E. 1068."

"Directions in a statute, not of the essence of the thing to be done, but given with a view merely to the proper, orderly,

and prompt conduct of the business, and by a failure to obey which the rights of those interested will not be prejudiced, are not mandatory. Troy Min. Co. v. White, 42 L. R. A., 549, 10 S. D., 475, 74 N. W., 236.'' Citing Cooley, Const. Lim., p. 92, and Sutherland, State Const.; sec. 447.

''Those directions in a statute which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly and prompt conduct of business, and by a failure to obey which the rights of those interested will not be prejudiced are not commonly regarded as mandatory, and if the act is performed, but not in the time nor in the precise mode indicated, it may still be sufficient if that which is done accomplishes the substantial purposes of the statute. Parvin v. Wimberg, 15 L. R. A., 775, 130 Ind., 561, 30 N. E., 790.'' Citing Cooley, Const. Lim., p. 77.

''The most satisfactory and conclusive test of the question whether the provisions of a statute are mandatory or directory is whether the prescribed mode of action is of the essence of the thing to be accomplished; in other words, whether it relates to matters material or immaterial, to matters of convenience or of substance. 'Gallup v. Smith, 12 L. R. A., 353, 59 Conn., 354, 22 Atl., 334.''

''Statutes requiring official bonds to be filed within a designated time are directory and not mandatory. Knox County v. Johnson, 7 L. R. A., 684, 124 Ind., 145, 24 N. E., 148.''

The provision of the Knoxville charter relied on by appellant is as follows:

''After filing of charges as hereinabove set out, the employee charged shall be entitled to a hearing before the Director of the Department employing the person against whom charges have been filed. Pending this hearing, the employee may be suspended by the Director. The Director concerned shall hear all charges within three days after the same are filed, unless this hearing is further postponed at the request of, or with the consent of the employee under charge. The Director concerned shall give his decision within five days after the conclusion of the hearing, exclusive of the day of the hearing.''

In Stewart v. Slater, 6 Duer, at page 102, the court says:

''The only objection that remains to be noticed is one which was relied on by all the appellants. It is that the decision of the judge was not given in writing and filed with the clerk within twenty days after the court at which the trial took place. As we intimated to counsel upon the argument, this is not an objection to which upon the hearing of an appeal, we can listen

and we trust it will never again be urged. The provision of the Code upon which it is founded has been frequently decided in the Supreme Court and in this, to be simply directory and consequently, that its non-observance by a judge furnishes no ground for a reversal of his decision. It is neither an irregularity that renders a judgment void, nor an error that justifies its reversal."

"When a statute specifies the times within which a public officer is to perform an act regarding the rights and duties of others, it will be considered directory unless the nature of the act or the language of the statute shows that it was intended as a limitation of power." People v. Allen, 6 Wed., 487; Jackson v. Young, 5 Cow., 269; See, also, U. S. Trust Co. v. U. S. F. Ins. Co., 18 N. Y., 199; Re Heath, 3 Hill, 42; Re Empire City Bank, 18 N. Y., 200; Miller v. Finkle, 1 Park Cr. Rep., 374.

Omitting, therefore, all consideration of the case of Nashville v. Martin, as authority, we see no reason to reverse the present case and send it back to start over again before the Director of Public Safety. Entirely aside from the Nashville case, we think there was no error in the judgment of the lower court, dismissing the petition for certiorari and the same is affirmed. The plaintiff in error will pay the costs of the appeal.

Owen and Senter, JJ., concur.