## ALBAUGH v. STATE EX REL. TITSWORTH.

[No. 17,790.    Filed June 17, 1896.]

OFFICERS.—*Township Trustee.—Failure to File Bond within Time Required by Law.—Statute Construed.*—A township trustee, elected at the general election in November, 1894, whose term of office might have begun at any time within ten days after his election, does not forfeit the office by failing to file his bond and oath of office within ten days after his election as required by section 7542, Burns' R. S. 1894, (5527, R. S. 1881).

SAME.—*Township Trustee.—Failure to Qualify.—Compensation.*—A township trustee who, through his own mistake and that of others as to the time when his term of office rightfully began, failed to qualify until after such time, is entitled to compensation only from the time he lawfully qualified and was rightfully entitled to the office.

From the Benton Circuit Court.    *Reversed.*

*E. F. McCabe*, for appellant.

*Fraser & Isham*, for appellee.

HACKNEY, J.—The appellant, who had been previously elected to the office of township trustee of Oak Grove township, Benton county, was holding over, because of the death of one elected as his successor, but who had failed to qualify. On the 6th day of November, 1894, the relator was duly elected to said office. On the 16th day of November, 1894, the relator's agent visited the office of the auditor of said county, taking the certificate of the relator's election

and exhibiting it to said auditor. At the same time said agent had in his possession a document signed by the relator and others, claimed to have been a bond for the faithful discharge of his duties as trustee of said township. Said agent had also, at the same time, a written oath, taken by the relator, as to the faithful discharge of his duties as such trustee. This document said agent did not exhibit to said auditor, but he did inquire as to when the auditor "was going to approve trustee bonds," telling him at the same time that he had Titsworth's bond, and the auditor, who was of the opinion that the term of office of trustees, then recently elected, would not begin until the following August, answered that "he would not approve any bonds of trustees until along the next summer." The document mentioned was not left with or tendered to the auditor, but was subsequently lost by said agent. On the 27th day of June, 1895, the relator filed with said auditor a bond and oath of office, to the approval of that officer, and on August 15, 1895, instituted this proceeding in *quo warranto* to oust the appellant from said office of trustee, and to recover the emoluments of said office. In addition to the facts already stated, it was shown, upon the trial, that the appellant had maintained the view, which he had stated after the election in 1894, that he was entitled to occupy the office in question until in August 1895. The relator's certificate of election gave the date of the beginning of his term of office as "the first Monday in August, 1895." It is a matter of general notoriety that the prevailing impression was that the terms of office of trustees then elected would begin on the first Monday in August, 1895, under and pursuant to the act of March 9, 1889 (Acts 1889, p. 344), notwithstanding the act of March 2, 1893 (Acts 1893, p. 192), which changed the time for elections to such office from

April to November. It is a fair inference also, from the circumstances and the conduct of the relator, that it was his opinion that the term of the office to which he had been elected, did not begin until the first Monday in August, 1895. It is now conceded, however, that the term of said office might have begun at any time within ten days after said election, upon the qualification of the relator therefor.

The appellant's theory of the controversy is, that the relator, by his failure to file his bond and take the oath of office within such period of ten days after said election, waived his right to do so later, and on the 27th day of June, 1895, and that he, the appellant, was entitled to hold over further because of such failure by the relator.

The lower court denied this theory, and ousted the appellant and gave judgment against him for $338.00, the emoluments of said office from the 16th day of November, 1894, to the time of the trial.

The statute provides, that ''If any officer of whom an official bond is required shall fail, within ten days after the commencement of his term of office and receipt of his commission or certificate, to give bond in the manner prescribed by law, the office shall be vacant.'' R. S. 1894, section 7542. Upon this provision the appellant predicates his theory of the case.

This provision of the statute is, with respect to the question here involved, the same that was passed upon in *Board of Commissioners, etc.,* v. *Johnson,* 124 Ind. 145 (7 L. R. A. 684). That provision was to the effect that "upon failure to * * * to give such bond, his office shall become immediately vacant." It was held that the requirement was directory, and not mandatory. It was said: "This rule is carried very far, for it is held, without substantial diversity of opinion, that unless the statute makes the

filing of a bond within the limited time a condition precedent to the right to the office, the failure to file it within the time prescribed will not work a forfeiture of the right to the office nor create a vacancy. In the case of the *City of Chicago* v. *Gage*, 95 Ill. 593 (35 Am. Rep. 182), the statute provided that upon failure to file a bond within the time designated the person chosen shall 'be deemed to have refused the office, and the same shall be filled by appointment,' and it was held not to change the rule. In *State* v. *Toomer*, 7 Rich. (Law) 216, the provision of the statute was that upon the failure of the person elected to file a bond within the time limited, 'his office shall be deemed absolutely vacant, and shall be filled by election or appointment,' and the court adjudged upon full consideration that title to the office was not lost. But we cannot further quote from the adjudged cases, and we cite them without comment. *State* v. *Colvig*, 15 Ore. 57; *State, ex rel.,* v. *Peck*, 30 La. Ann. 280; *State* v. *Ring*, 29 Minn. 78."

"A supervisor, by failing to take the oath in the time prescribed by law, does not vacate his office." This proposition was held in *Smith* v. *Cronkhite*, 8 Ind. 134, the statute now in question then having been in force.

In *State, ex rel.,* v. *Johnson*, 100 Ind. 489, the doctrine was recognized that forfeiture, under the statute here in question, for delay beyond the period of ten days, will not be enforced, and it was said, that if the person elected show himself not to be in fault in permitting the time to elapse without filing the bond, he will not be deemed to have abandoned the office. It is manifest that the legislature intended to prevent unnecessary delay in assuming the duties of an office to which one has been elected in order that the public service may not suffer, and that the chosen servant

may thereby signify his intention to accept the trust. The construction of all statutes looking to the efficiency of the public service should be liberal in promoting the choice of the people. In this instance, the beginning of the term was in substantial doubt; that doubt had been promoted by the expressed opinions of the appellant, by the language of the certificate of election, by the action of the auditor, and by the prevailing general opinion of the public.

The choice of the people and the rights of the relator may not be thwarted upon an erroneous decision, supported by so many weighty considerations. It will be observed that the ten days mentioned in the statute, began to run from the "commencement of his term." The time of the commencement of his term was involved in substantial legal doubt, and was not determined until the recent case of *State, ex rel.,* v. *Wells,* 144 Ind. 231.

Treating the visit to the auditor by the relator's agent as for the purpose of complying with the law, and as indicating an intention not to abandon the office, and regarding the doubt as to the commencement of the term, we think the relator excusable in not filing his bond on or before the 16th day of November, 1894, and that he was entitled to the office upon the filing of the second bond. This conclusion, however, does not support the claim of the relator to the compensation received by the appellant, between the 16th day of November and the time when he filed his second bond. The relator was not entitled to compensation before he qualified as an officer, and gave bond for the faithful discharge of the duties of the office. This he did not do until June 27, 1895. The conduct of the relator very clearly indicates his decision that the term did not begin in November when his agent visited the auditor. We are not advised by

the evidence as to the stipulations of the bond then in the possession of his agent, nor is it disclosed as to what were the obligations of the alleged oath of office. The stipulations of the bond and the oath taken may have related to the duties of the office from and after the first Monday in August, and not from the date when the certificate was exhibited to the auditor. If the relator ever regarded the inquiry as to the approval of the first bond, as a filing of that bond, he certainly abandoned that theory when he prepared another bond, with other securities, and filed it, not as a substitute for the first, but as an original bond.

In our opinion, the trial court should have granted the appellant's motion for a new trial.

The judgment, therefore, is reversed, with instructions to grant the motion for a new trial.

McCabe, J., did not participate in this decision.