Minnick v. State, ex rel.

---

MINNICK v. THE STATE, EX REL.

[No. 19,030.    Filed March 28, 1900.]

APPEAL AND ERROR.—*Evidence.*—*Bill of Exceptions.*—The act of 1897 (Acts 1897, p. 244) prescribing the manner in which the evidence may be made a part of the record on appeal does not require that the evidence be first filed with the clerk of the trial court before it is incorporated into the bill of exceptions. *pp. 381, 382.*

SAME.—*Evidence.*—*Transcript.*—*Bill of Exceptions.*—The report of the evidence under the act of 1897 may be made by the stenographic method, or the evidence may be taken down in longhand, and then

embodied in the bill of exceptions, and such original bill, when filed as provided by said act may be certified to the Supreme Court without being transcribed.  *p. 382.*

APPEAL AND ERROR.—*Evidence.*—*Bill of Exceptions.*—Where it appears from the record that the bill of exceptions containing the evidence was signed by the trial judge and filed in open court, it will be presumed, nothing appearing to the contrary, that the bill was filed after being signed by the judge.  *p. 382.*

SAME.—*Bill of Exceptions.*—Where the record showed that the cause was tried at the September term and the findings announced at the next term of court, at which time appellant filed a motion for a new trial, and on the same day filed in open court his bill of exceptions containing the evidence, and the motion for a new trial was not passed upon until the next term of court, the evidence was properly in the record, although it was not shown that time was given in which to file the bill of exceptions.  *pp. 382-384.*

OFFICERS.—*Failure to Qualify.*—*School Trustee.*—Where one appointed as school trustee failed to qualify within the time fixed by statute, and the town trustees appointed another person to fill the office, the title of the former to the office was thereby forfeited, and his attempt to qualify thereafter did not revive or restore his title.  *pp. 384-392.*

From the Henry Circuit Court.   *Reversed.*

*M. E. Forkner*, for appellant.
*W. A. Brown*, for appellee.

JORDAN, J.—This is an action by information instituted by the State on the relation of its prosecuting attorney to oust appellant, an alleged usurper of the office of school trustee of the school town of Sulphur Springs, Henry county, Indiana.

A trial by the court resulted in a finding in favor of the State.   The court thereupon rendered its judgment ousting said appellant from his said office, and directed that he turn over all books and papers thereof to one Burton O. Post; and judgment was rendered against appellant for cost.  From this judgment he appeals, and the principal error assigned is the overruling of his motion for a new trial.

At the very threshold we are confronted with the insistence of counsel for appellee· that the evidence upon which

this cause was tried is not in the record. The transcript discloses that the cause was tried at the September term, 1898, of the Henry Circuit Court; and after hearing the evidence, the court took the cause under advisement. On the 31st judicial day of the November term next following, the court announced its finding against appellant. On the 53rd judicial day of said November term, being January 20, 1899, appellant filed his motion and reasons for a new trial; and on the same day filed his bill of exceptions embracing the evidence. This bill appears to have been signed by the trial judge on December 20, 1899, and it is ordered therein that it be made a part of the record in this cause. The motion for a new trial was taken under advisement by the court until the February term, 1899, which was the term next following that of the November term. The motion was overruled at the said February term and final judgment was then rendered.

Counsel for appellee insists that the evidence is not in the record for three reasons: (1) It does not affirmatively appear that the longhand manuscript of the evidence, taken by the shorthand reporter, was filed with the clerk of the court before it was embodied in a bill of exceptions; (2) that it does not appear that the bill of exceptions was filed after it was signed by the judge; (3) that the record does not affirmatively disclose that any time was granted by the court to appellant to file his said bill of exceptions.

In regard to the first contention, it is sufficient to say that the statute approved March 8, 1897 (Acts 1897, p. 244), which prescribes the manner in which the evidence in a cause may become a part of the record on appeal to this court, does not require that the evidence be first filed with the clerk of the trial court before it is incorporated into a bill of exceptions; and, hence, decisions of this court which were made in reference to the act of 1873 (Acts 1873, p. 194), to the effect that the record must affirmatively show that the longhand manuscript of the evidence was filed with

the clerk before it was incorporated into a bill of exceptions, can have no application.

Under the law of 1897, the method employed to report the evidence given upon a trial is not essential. The report thereof may be made by the stenographic method, or the evidence may in the first instance be taken down in longhand and then embodied in the bill of exceptions; and such original bill, when filed as provided by the said act, may be certified to this court without being transcribed. Ewbank's Manual, §35, and cases there cited.

The bill of exceptions containing the evidence in this case appears to have been signed by the judge and filed in open court on January 20, 1899. We are therefore bound to presume, under such circumstances, nothing to the contrary appearing, that the bill was filed after it had been signed by the trial judge. This disposes of appellant's second contention.

The trial of this cause, as we have stated, occurred at the September term, 1898, of the lower court. The court's finding was not announced until the next term, being the November term following. At the same term that the court announced its finding, appellant filed his motion for a new trial. Immediately after filing this motion, on the same day, he filed in open court his bill of exceptions containing the evidence. The motion for a new trial was not overruled until the February term next following.

It is provided in §638 Burns 1894, §626 R. S. 1881 and Horner 1897, that an exception must be taken by the objecting party to the decision of the court at the time it is made; but time may be given to reduce the exception to writing, but not beyond the term unless by special leave of court. It is further provided by this section that, if a motion for a new trial be filed, in which such decision is assigned as a reason therefor, such motion shall carry such decision and exception thereto forward to the time of ruling on the motion; and time may then be given within which to reduce

such exception to writing.  All that part of the above mentioned section which precedes the proviso is identically the same as the section existed in the code of 1852 (§343, 2 Davis 1876 p. 176), and the provisions therein that time may be given to reduce the exception to writing, but not beyond the term except by special leave of court, must be construed in connection with the proviso engrafted upon this section of our present code.  This proviso in effect declares that when a motion for a new trial is filed in a cause, in which motion any decision of the court is properly assigned as a reason for a new trial, the motion shall operate to carry such decision and the exception thereto forward to the time of ruling upon the motion; and time may then be given to reduce such exception to writing.  Or, in other words, the court may then grant time in which to prepare a bill of exceptions and present the same to the trial judge for settlement and signing.

In the case at bar, the bill, it is true, was filed at a term subsequent to the one at which the evidence was introduced, and the rulings and exceptions thereto were reserved.  It was filed on the same day, however, immediately following the filing of the motion for a new trial.  This latter motion, under the proviso of the section of the code in question, operated to carry forward all the rulings or decisions of the court, which were and could be legitimately assigned as grounds for a new trial, to the time of filing the motion and up to and including the time at which the motion was denied.

By reason of the force and effect of said proviso, as we construe it, appellant was authorized as a matter of right to file the bill of exceptions in controversy, either at the term of court at which the trial was had, or at any time thereafter previous to the ruling upon his motion for a new trial, without first obtaining special permission of the court to do so. But in the event he had failed to file such bill prior to the ruling upon said motion, he would have been required, when the motion was overruled, to obtain a grant of time in which

to prepare and present to the trial judge his bill of exceptions. If the bill, however, had been filed subsequent to the ruling upon the motion for a new trial, but before the close of the same term, under such circumstances, even if the record was silent in respect to the granting of time, this court would presume that time had been given, when the motion was overruled, in which to present the bill, and that such bill had been presented to the trial judge within the time allowed. But if it were properly disclosed upon appeal that the bill of exceptions was presented to the judge after the close of the term at which the motion for a new trial was denied, then, under such circumstances, the record entry of the order-book must affirmatively show that a time, which extended beyond such term, in which to prepare and present such bill to the trial judge for settlement and signature, was granted when the motion was overruled. Elliott's App. Proc. §804.

The bill of exceptions in question, however, was filed at a previous term of the court, after the filing of the motion for a new trial, and was already on file at the time the motion for a new trial was overruled. Certainly, then, under the circumstances, it can not in reason be claimed that the statute intended or required that appellant, at the time the motion was denied, should obtain leave to do that which he had already done. We therefore conclude that the bill of exceptions in dispute is properly a part of the record in this appeal.

We next address ourselves to the question,—does the evidence sustain the court's decision? The material facts which the evidence indisputably establishes are apparently as follows: The town of Sulphur Springs in Henry county, Indiana, is incorporated under the general laws of this State, and has been so incorporated for a period of about twenty years. On June 23, 1898, at a regular meeting of its board of trustees, Burton O. Post was by said board elected a school trustee for the school town of Sulphur Springs to fill a vacancy occasioned by the expiration of the term of one James

Wright, then a member of the board of school trustees. Post was in all respects eligible to hold said office. No certificate of his election was issued to him, nor does it appear that he ever demanded such certificate. It is shown, however, that on June 24th, the day after his election, he was informed and notified that he had been elected a member of the board of school trustees. He did not take the oath of office after receiving such information nor did he make any effort to meet with the said board of school trustees. In fact, he did nothing whatever to qualify or be inducted into office or signify his intention to accept the same under said election except as hereinafter mentioned. This status of affairs seems to have continued until the 2nd day of August, 1898. On that day it appears that Mr. Hays, one of the hold-over members of the board of school trustees, filed his bond as treasurer of said board with the county auditor, intending to draw the school funds to which the board was entitled, but was informed by the auditor that he could not recognize the board for the reason that it had only two members. Hays, immediately upon his return home on that day, informed the board of trustees of the town of Sulphur Springs of the state of affairs and the claim made by the auditor. The board thereupon held a meeting on the evening of August 2nd, and elected George Minnick, the appellant, who in all respects was eligible to hold the office, a school trustee, the record made by the board at that meeting reciting that the object of the meeting was to elect a school trustee for the reason that Burton O. Post, who was elected at the meeting of June 23, 1898, had failed to qualify. A certificate of election was issued to Minnick, and on August 4th he took the official oath and filed his bond with the county auditor as secretary of the school board. On the day following the election of appellant, James Wright, whose place on the school board was intended to be filled by the election of Post, filed with the auditor his bond, as secretary of such board, with the said Burton O. Post as one of the sureties.

thereon. This bond apparently was filed, as the evidence discloses, for the purpose of enabling Wright to continue in office. According to Post's own testimony, given on the trial, he admitted that on August 3, 1898, at the time when he signed Wright's bond, he made the following statement to Wright: "You are the old member of the board. You file your bond, and I will go on it and have Thompson take it to Newcastle and file it. If it is all right let me know." On August 5, 1898, the day after Minnick had taken the oath of office and filed his bond, as heretofore stated, Post also took the oath of office, and filed his bond, as secretary of the school board, with the county auditor. This was the first attempt made by him to qualify in any manner under his election of June 23, 1898. On August 6, 1898, at a meeting of the school board, appellant met as a member thereof, claiming under his said election, and the board recognized him as a member, and elected him as the secretary of the board. At the same meeting, Stout and Hays, the two hold-over members, were chosen as president and treasurer, respectively, and the board then adjourned to meet again on August 8th following. Post, it seems, after he had taken the steps to qualify, which he did on August 5th, made an attempt to meet with the school board as one of its members; but it seems that said board did not recognize him as such member.

Counsel for appellant insists that these facts do not sustain the judgment of the court in ousting appellant as a usurper of the office in question.

Section 5915 Burns 1894, §4439 R. S. 1881 and Horner 1897, which has been in force as amended since March 12, 1875, reads as follows: "The common council of each city and the board of trustees of each incorporated town of this State shall, at their first regular meeting in the month of June, elect three school trustees (who shall hold their office one, two, and three years respectively, as said trustees shall determine by lot at the time of their organization), and,

annually thereafter, shall elect one school trustee, who shall hold his office for three years. Said trustees shall constitute the school board of the city or town; and, before entering upon the duties of their office, shall take an oath faithfully to discharge the duties of the same. They shall meet within five days after their election, and organize by electing one of their number as president, one as secretary and one as treasurer. The treasurer, before entering upon the duties of his office, shall execute a bond, to the acceptance of the county auditor, conditioned as in ordinary official bonds, with at least two sufficient freehold sureties, who shall not be members of said board, in a sum not less than double the amount of money which may come into his hands, within any one year, by virtue of his office. The president and secretary shall each give bond, with like sureties, to be approved by the county auditor, in any sum not less than one-third of the treasurer's bond. All vacancies that may occur in said board of school trustees shall be filled by the common council of the city or board of trustees of the town; but such election to fill a vacancy shall only be for the unexpired term. The board of school trustees shall, each year, within five days after the annual election of a member, reorganize their board and execute their respective bonds for the ensuing year. Said trustees shall receive for their services such compensation as the common council of the city or the board of trustees of the town may deem just; which compensation shall be paid from the special school revenue of the city or town."

Under the provisions of this section it is made the duty of boards of trustees of incorporated towns and common councils of such cities as come under its provisions annually to elect, at their first regular meeting in June, a school trustee. While the statute directs that the election for such trustee shall be held at the first regular meeting in June, still, if for any reason it becomes necessary, the board may exercise this power at any subsequent meeting. *Sackett* v. *State*, 74 Ind. 486. Of course the term of the person subsequently

elected will begin to run from the time the term of his predecessor expired, and the latter would be authorized to hold over until his successor had been elected and qualified. *Sackett* v. *State, supra; School Town of Milford* v. *Powner,* 126 Ind. 528; *Blakemore* v. *Dolan,* 50 Ind. 194.

Article 15, §4, of the State Constitution is as follows: "Every person elected or appointed to any office under this Constitution shall, before entering on the duties thereof, take an oath or affirmation to support the Constitution of this State and of the United States, and also an oath of office."

Section 7533 Burns 1894, §5519 R. S. 1881 and Horner 1897, requires that: "Every officer and every deputy, before entering on his official duties, shall take an oath to support the Constitution of the United States and of this State, and that he will faithfully discharge the duties of such office."

Section 2131 Burns 1894, §2044 R. S. 1881 and Horner 1897, provides that: "Whoever, having been elected or appointed to any office, or being the deputy of any officer so elected or appointed, performs any of the duties of such office without having taken and subscribed the oath prescribed by law, or before having given and filed the bond required of him and in the manner prescribed by law, shall be fined not more than $1,000 nor less than $10."

These provisions of our fundamental and statutory law clearly show that a public official is not authorized to enter upon the discharge of the duties of the office to which he may have been elected or appointed until he has taken the official oath required and given the bond provided for in the event an official bond is also required. The qualification which the law prescribes is, as a general rule, considered a condition precedent which must be complied with in order to constitute the person chosen to fill the office an officer *de jure*. Such person is not in a position to demand possession of the office to which he may have been elected or appointed, or to exercise the functions thereof, until he has .

qualified as the law exacts. 19 Am. & Eng. Ency. of Law, 440; *McVeany* v. *Mayor, etc.*, 80 N. Y. 185, 36 Am. Rep. 600; *People* v. *Taylor*, 57 Cal. 620.

The statute, under the authority of which Post and appellant were elected, expressly requires that trustees thereunder, before entering upon the discharge of the duties of the office, shall take an official oath. This apparently is the only qualification exacted to entitle the person elected to become a *de jure* member of the school board and take part in its reorganization.

This statute, as we have seen, provides that the three trustees originally chosen shall meet within five days after their election and organize, by electing one of their number as president of the board, one as secretary, and one as treasurer. Each of these, as such official, is required to give a bond as therein provided, not merely as school trustee, but to secure the faithful performance of the duties of president, secretary, or treasurer, respectively. *Koerner* v. *State*, 148 Ind. 158.

Within five days after each annual election of a member, this same statute, in effect, requires that the trustees, which includes the hold-over members and the one elected, shall meet and reorganize the board by electing from their number a president, secretary, and treasurer for the ensuing year, and each, as such official, is required to execute his respective bond. The evident intent and purpose of the law is that the school trustee chosen at the annual election in June shall promptly qualify as such by taking the required oath, and be ready to take his seat as a member of the board, in order that it may be reorganized within the time designated.

Where the person elected as trustee is apprised of or has notice of his election in time to qualify within such period of five days, it is his duty to do so unless he does not intend to accept the office, in which event he should notify the common council, or the board of trustees, as the case may be, of his intention not to accept, in order that it may pro-

ceed to fill the vacancy by electing another person. The failure of the party elected as such trustee to qualify within the period designated, by taking the oath of office, in the absence of a showing that such neglect is not attributable to his own fault, will authorize the board of trustees of a town, or common council of a city, as the case may be, to assume that their appointee does not intend to accept the office, and it would be the duty of such body, under the circumstances, to proceed to fill the vacancy.

The object of the statute, requiring a person chosen to fill a public office to qualify within the prescribed time, is to compel him promptly to enter upon the discharge of his official duties after the beginning of his term; and if, without legal excuse, he neglects to do so, such neglect will constitute a ground of forfeiture, which may result in his losing the office. *State* v. *Johnson*, 100 Ind. 489.

It is true, as a general rule, that such statutes are construed by the courts as directory only, and not mandatory; and the mere delay in not qualifying within the prescribed time will not, as a rule, *ipso facto* forfeit the right or title to the office. *Board, etc.*, v. *Johnson*, 124 Ind. 145, 7 L. R. A. 684; *Albaugh* v. *State*, 145 Ind. 356; Mechem's Pub. Off., §§251, 433.

As the delay does not of itself amount to a rejection of the office, but is only a ground of forfeiture, the party elected and in default may still be permitted to qualify after the prescribed time; and if he does so, his default will be considered as waived. Mechem's Pub. Off., §262. But when the delay to qualify is continued beyond the time fixed by the statute, and the authorities or body in whom is lodged by law the power to fill the vacancy have thereafter acted, and legally elected or appointed another to fill the office, the right or title of the person to the office, who was in default in not qualifying as the law exacted, is absolutely forfeited or destroyed and his attempt to qualify thereafter can not revive or restore his title. This rule is well affirmed by the

authorities. *Smith* v. *Cronkhite*, 8 Ind. 134; *Johnson* v. *Mann*, 77 Va. 265; *State* v. *Johnson*, 100 Ind. 489; *Falconer* v. *Shores*, 37 Ark. 386; *Board, etc.*, v. *Johnson*, 124 Ind. 145, 7 L. R. A. 684; *Ross* v. *People*, 78 Ill. 375; *City of Chicago* v. *Gage*, 95 Ill. 593, 35 Am. Rep. 182; Mechem's Pub. Off., §262; Throop on Pub. Off., §§427, 428.

Applying the principles heretofore asserted, it is evident, we think, that the facts established by the evidence in this case do not justify the decision of the trial court in holding that appellant had unlawfully usurped the office in question. It is true that the orderly way in which to have notified Post of his election would have been for the clerk of the town's board of trustees to have issued to him a certificate of his election. The clerk, upon the witness stand on the trial of the case, stated that he had in person notified Post of his election as school trustee the day thereafter. This, however, Post denied, but he admitted that he had been apprised or notified of his election on the day following that event, and he does not attribute his delay in qualifying for a period of over forty days after his election to the absence of notice; and we may presume, under the circumstances, that he was fully apprised of his election and of the duty which the law imposed upon him in respect to qualifying. From the evidence it appears that he was more interested in having Wright, whom he had been elected to succeed, continue to hold over than he was in being inducted into office himself. He delayed, as we have seen, for a period of time running from June 24, 1898, to August 5th, following, and then, after appellant had been elected and qualified, he suddenly became aware that he ought to take the necessary steps to qualify. This, according to the rule which we have asserted, was too late. The long continued delay to qualify, for which no legal excuse is offered, certainly justified the board in assuming that Post had rejected the office and warranted that body in filling the vacancy, as

it did, by the election of appellant. This action of the board, as we have seen, absolutely destroyed or forfeited the title of Post to the office, under his election, and his qualification thereafter could not serve to revive or restore his former right or title.

It follows, therefore, that the court, under the facts, erred in its decision in holding that appellant had unlawfully usurped the office in controversy. The judgment is therefore reversed, and the cause ordered to be remanded to the lower court, with instructions to grant appellant a new trial, and for further proceedings not inconsistent with this opinion.