## STEPHEN C. LITTLE, Clerk, vs. WILLIAM E. SCHUL.

*Tenure of office: constables; constitutional provisions; power of legislature; appointment by Mayor and City Council of Baltimore City; oath of office; time for taking. Acts of 1912, Ch. 823.*

Where an appointment to public office is made in pursuance of the provisions of the Constitution which fix the term of office, the appointment can not be revoked or annulled, or the term of office abridged or extended by the legislature, unless so authorized by the Constitution.                        p. 459

Section 42 of Article 4 of the Constitution regulates the appointment and removal of constables and fixes their term of office at two years. The Legislature may regulate the number of constables to be appointed for the wards of Baltimore City and the election districts of the counties, but it may not revoke or annul their appointment, or diminish the term of office of any already lawfully appointed; even though they have not qualified.                        p. 461

The power to appoint constables for a definite term is given by the Constitution to the Mayor and City Council of Baltimore and the County Commissioners of the counties, and the authority to remove is conferred upon the judges of the Courts having criminal jurisdiction, and then only upon conviction, etc., in a Court of law. Where the appointing power has been lawfully exercised, the right of the person appointed for the term fixed for the constables is beyond the control of the Legislature.                        p. 461

In the case of constables the right to qualify vests immediately upon the complete and lawful exercise of the appointing power, and under the Constitution this right is not subject to the control of the Legislature.                        p. 463

Before the passage of Ch. 823, of the Acts of 1912, making changes as to the number and duties of the constables in Baltimore, the ordinance No. 87, of the City Council of Baltimore, was passed, and approved by the Mayor, naming certain constables to office for the term of two years. Such appointment was complete upon the passage and approval of the ordinance. In such a case a commission or certificate of appointment is not necessary, and the appointment could not be revoked or disturbed by the Legislature.          p. 465

Constables under the Charter of Baltimore City are to be appointed in accordance with the provisions of sec. 206, by the Mayor and City Council of Baltimore by *ordinance,* and not under the provisions of sec. 25, which provides that the Mayor shall have the sole power of appointment of all heads of departments, etc., subject to confirmation by a majority vote of all the members of the Second Branch of the City Council.          p. 465

It is the duty of a constable under sec. 1 of Art. 20 of the Code to take the oath of office within 30 days after his appointment; under sec. 7 of Art. 1 of the Constitution neglect of that duty is to be considered as a refusal to accept the office.          p. 465

A constable appointed by an ordinance of the Mayor and City Council of Baltimore applied to the Clerk of the Superior Court to administer to him the oath of office, he did not produce a copy of the ordinance or a certificate of his appointment, and no notice of such appointment had been received at the office of the clerk; *held* that without such evidence the clerk was not required to administer the oath.          p. 470

*Decided July 10th, 1912.*

Appeal from the Baltimore City Court.

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Benjamin H. M. Kindless* and *Eugene O'Dunne,* for the appellant.

*J. Cookman Boyd* and *Myer Rosenbush,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

In March, 1912, the Mayor and City Council of Baltimore passed Ordinance No. 87, appointing two constables for each of the wards of the City, except the eighth and twelfth wards, for each of which only one constable was appointed, one constable for each of said wards having been previously appointed.

By that ordinance, which was approved by the Mayor on the 19th of March, 1912, the appellee, William E. Schul, and James Barnes were appointed constables for the first ward for two years from the date of its passage. The appellee had been a constable for sixteen years, and had always qualified before Thomas A. Campbell, a deputy clerk of the Superior Court of Baltimore City. He was told by one of the constables appointed by said ordinance that the ordinance had been signed by the Mayor, and on the 4th of April, 1912, he went to the office of the appellant, the clerk of the Superior Court, and told Mr. Campbell that he had heard that the ordinance had been signed by the Mayor and that he had come there to qualify. Mr. Campbell told him that he did not have a copy of the ordinance, that it was in the city solicitor's or the Mayor's office, but that the "People's Court Bill" had been passed by the Legislature, and that he was no longer a constable and that he could not swear him in. On Saturday, the 11th of May, the appellee went to the office of the appellant with his attorney and requested Mr. Campbell to administer to him the official oath. Mr. Campbell explained to the attorney that he did not have a copy of the ordinance or a certificate of the appointment of the appellee, and referred them to the appellant. Appellee's attorney then left the office to procure a certified copy of the ordinance, but when he returned the

appellant was not there. The following Monday, May 13th, the appellee, and his attorney again went to the office of the appellant, and, producing a certified copy of the ordinance and a duly executed bond, requested the appellant to administer to the appellee the oath required by law to be taken and subscribed by constables, but the appellant refused to do so.

It appears from the testimony of Mr. Campbell that he had been deputy clerk of the Superior Court of Baltimore City for the last fifteen years, and that during that time the constables of Baltimore City have generally qualified before him; that ever since Ex-Governor White was City Solicitor, and for a number of years, it had not been the practice or custom in Baltimore City to issue commissions to constables, but the Clerk of the Superior Court receives from the Mayor's office a certified copy of the ordinance appointing constables, or a notice of their appointment, and when the constables come to the clerk's office he gives them a bond, and when it is executed and returned to him and has been approved, he administers to them the official oath, and after the oath has been taken and subscribed, he gives them a certificate showing that they have duly qualified, and that that certificate is the only commission or certificate they receive.

Upon the refusal of the appellant, on the 13th of May, 1912, to administer the official oath to the appellee, the appellee, on the same day, filed in the Baltimore City Court a petition alleging that he had been duly appointed constable for the first ward of Baltimore City by ordinance No. 87 of the Mayor and City Council of Baltimore, a copy of which was filed with the petition, and that on the 13th of May, 1912, he exhibited to the appellant, as clerk of the Superior Court of Baltimore City, a certified copy of said ordinance, and tendered to him a bond duly executed, as required by law, and requested the appellant to administer to him the oath which the law requires to be taken and subscribed by constables, and that the appellant refused to administer said oath to him, and praying for a writ of mandamus commanding the appellant to administer said oath to him, and, upon

his taking and subscribing said oath, and presenting the bond, as required by law, and paying the necessary fees, to issue to him a certificate showing that he is a duly qualified constable of Baltimore City:

The answer of the appellant alleges that the appellee was appointed a constable of Baltimore City prior to the 19th day of December, 1908, and that he qualified as constable on that day; and that he had since been acting as constable of Baltimore City "under said appointment and qualification." It admits the passage of ordinance No. 87, but denies that the appellee was thereby appointed constable for the first ward of Baltimore City. The answer further alleges that the appellee did not make, or offer to make the declaration of religious belief, and did not take and subscribe, or offer to take and subscribe the oath required by the constitution within thirty days after his appointment or the passage of ordinance No. 87, and that the appellee did not offer to give a bond, with good and sufficient security, approved by the Judge of the Superior Court of Baltimore City, as required by law, and that by reason of such failure and neglect on the part of the appellee he was not entitled to have said oath administered to him. The ninth paragraph of the answer charges as a further reason why the writ should not be granted, that section 206 of the charter of Baltimore City, in pursuance of which ordinance No. 87 was passed, was repealed by the Act of 1912, Chapter 823, commonly called the "People's Court Bill," which went into effect on the 2nd of May, 1912, and that at the time the appellee offered to qualify, on the 13th of May, 1912, his appointment had, by said Act, been annulled and made void, and that, therefore, he was not entitled to qualify as a constable of Baltimore City.

The appellee demurred to the ninth paragraph of the answer, and after the taking of the testimony to which we have referred, the Court below passed an order sustaining the demurrer, and directing the writ to issue as prayed, and this appeal is from that order.

The contentions of the appellant are, first, that ordinance No. 87, appointing the appellee, was not passed in accordance with the provisions of section 25 of the charter of Baltimore City, and is, therefore, void and of no effect; second, that the appellee failed to qualify within the time prescribed by law and thereby forfeited his right to the office, and third, that section 206 of the charter of Baltimore City, in pursuance of which the ordinance appointing the appellee was passed, was repealed by the Act of 1912, Chapter 823, which went into effect on the 2nd day of May, 1912, and his appointment was thereby annulled before he offered to qualify on the 13th of May, 1912.

1. Taking up these several contentions in the order in which they were presented in this Court, without meaning to question the validity of the Act of 1912, Chapter 823, which in our view of the case is not involved in this controversy, we think it quite clear that where an appointment to a public office is made in pursuance of the provisions of the Constitution, and the Constitution fixes the term of office, the appointment cannot be revoked or annulled, or the term of office abridged or extended by the Legislature unless it is authorized to do so by the Constitution. It is said in 23 *Ency. of Law* (2nd ed.), on page 406, where many cases are cited in support of the text, that, "In the United States the terms of certain officers are not infrequently fixed by the State Constitutions. Where this is the case the Legislature cannot extend or abridge the terms so fixed, either directly or indirectly," and it is stated on page 431, "When the Constitution has declared the grounds or mode of removal of an incumbent before the expiration of his term, the Legislature has no power to authorize the removal or suspension of the officer for any other reason or in any other mode." In the case of *Marshall* v. *Harwood*, 5 Md. 423, the Court, referring to the term of State librarian, which was fixed by the Constitution at "two years, and until his successor shall be elected and qualified," said, "we are clear the Legislature would have no power to curtail the term, by making it end

during the session at which the election took place." It was said by the Supreme Court of Ohio in *State* v. *Brewster,* 44 Ohio St. 589, 9 N. E. Rep. 849: "The assumption of counsel that there is no power in the general assembly to extend the term of an office, which is limited by the Constitution, is abundantly warranted by *State* v. *Howe,* 25 Ohio St. 588, where it is said by McIlvaine, C. J.: "After a careful examination of the question, in the light of both principle and authority, we are led to the conclusion that the general assembly may provide against the occurrence of vacancies by authorizing incumbents to hold over their terms, in cases where the duration of their terms is not fixed and limited by the Constitution. Also—in cases where the duration of the term of office is limited by the Constitution, of course its duration cannot be extended by statute." And in the case of *People* v. *Knopf,* 198 Ill. 340, 64 N. E. Rep. 842, the Court, after citing *Mechen, Pub. Off.,* sec. 387, in support of the statement that the Legislature had no control over a term of office fixed by the Constitution, and "could not extend or diminish it," and after referring to the authority given the Legislature to increase the number of judges of the Superior Court, then said, "but the term for which judges should be elected was not entrusted to such discretion, and the Legislature had no power over it. The people determined that question for themselves and fixed the term at six years. The Legislature had no authority to inaugurate or put in effect a scheme opposed to that provision, by which judges should be elected for two years, instead of six."

Section 42 of Article 4 of the Constitution of Maryland, relating to justices of the peace and constables, is as follows: "The Governor, by and with the advice and consent of the Senate, shall appoint such number of justices of the peace, and the County Commissioners of the several counties, and the Mayor and City Council of Baltimore, respectively, shall appoint such number of constables for the several election districts of the counties and wards of the City of Baltimore, as are now or may hereafter be prescribed by law; and

justices of the peace and constables so appointed shall be subject to removal by the judge or judges having criminal jurisdiction in the county or city, for incompetency, wilful neglect of duty, or misdemeanor in office, on conviction in a Court of law. The justices of the peace and constables so appointed and commissioned shall be conservators of the peace; shall hold their office for two years, and shall have such jurisdiction, duties and compensation, subject to such right of appeal in all cases from the judges of justices of the peace, as hath been heretofore exercised, or shall be hereafter prescribed by law." This section not only declares how constables shall be appointed, but it fixed the term of office at two years, and provides how they may be removed. The Legislature may regulate the number of constables to be appointed for the wards of Baltimore City and the election districts of the counties, but it cannot in so doing revoke or annul the appointment, or diminish the term of office of a constable who has already been lawfully appointed, and who is not subject to removal except in the manner provided by this section. The power to appoint for a definite term is given to the Mayor and City Council of Baltimore and the County Commissioners of the counties, and the authority to remove from office is conferred upon the judges of the Courts having criminal jurisdiction, and then only upon conviction of incompetency, etc., in a Court of law. Where the appointing power thus conferred has been *lawfully* exercised, the right of the person appointed to the office for the term fixed by the Constitution is beyond the control of the Legislature. It is urged by counsel for the appellant that this rule can only apply to one who has qualified and is in office, and he cites and relies upon the cases of *Thomas* v. *Owens,* 4 Md. 189, and *Jump* v. *Spence,* 28 Md. 10. These cases, however, only go to the extent of holding that one who is appointed or elected to an office is not entitled to the salary attached to that office until he has qualified, and the argument of counsel loses sight of the distinction between the right to receive the salary, which

cannot arise until there has been a complete investiture of the office, and the *right* of the person appointed to *qualify*, in order that he may exercise the functions and enjoy the benefits of the office. It is this *right to qualify*, which vests immediately upon the complete and lawful exercise of appointing power, and which is distinctly recognized in the cases relied on by the appellant, that the people, in the adoption of the present Constitution, did not leave, in the case of constables, subject to the control of the Legislature.

In *Thomas* v. *Owens*, the Court stated that the Comptroller, "after his election and commission by the Governor; had the right to invest himself with the powers and entitle himself to the salary, by qualifying in the manner pointed out by the Constitution." In the case of *Dyer* v. *Bayne*, 54 Md. 87, Judge Alvey said, "The Governor made the nomination of the plaintiff within the fifty days, and before the first Monday of March, 1880. The Senate was under no restriction as to time within which it should act upon the nomination; and having confirmed the nomination during the regular session, the appointment was complete from the time of such confirmation. *United States* v. *Bradley*, 10 Pet. 364. The Governor had no discretionary power over the appointment after confirmation, nor had he power to withhold the commission, for the issuing of the commission was a mere ministerial act. The efficient and only discretionary act of the Governor in making the appointment, was in making the nomination, and the Senate having no power over the nomination than to concur or non-concur in it, the act of the Governor became complete and effective with the concurrence of the Senate." In the case of *Marbury* v. *Madison*, 1 Cranch, 137, the right of an officer who had been duly appointed is stated by the Court in the following clear and concise terms, "Where an officer is removable at the will of the executive, the circumstances which complete his appointment is of no concern; because the act is at any time revocable, and the commission may be arrested, if still in the office. But when the officer is not removable at the

will of the executive, the appointment is not revocable, and cannot be annulled; it has conferred legal rights which cannot be resumed. The discretion of the executive is to be exercised, until the appointment has been made. But having once made the appointment, his power over the office is terminated, in all cases where, by law, the officer is not removed by him. The right to the office is then in the person appointed, and he has the absolute unconditional power of accepting or rejecting it."

"Mr. Marbury, then, since his commission was signed by the president, and sealed by the secretary of state, was appointed; and as the law creating the office gave the officer the right to hold for five years, independent of the executive, the appointment was not revocable, but vested in the officer legal rights, which are protected by the laws of his country. To withhold his commission, therefore, is an act deemed by the Court not warranted by law, but violative of a vested legal right."

In the case at bar the Constitution authorized the Mayor and City Council of Baltimore to make the appointment for a term of two years, and the ordinance was passed by the City Council and approved by the Mayor before the Act of 1912, Ch. 823, went into effect. The discretion given the Mayor and City Council of Baltimore had been exercised, and the appointment was complete upon the passage and approval of the ordinance. A commission or certificate of appointment is not, in such cases, necessary to complete the appointment, and could only have been *additional evidence* of an appointment *already made.* If, then, the appointing power was *lawfully* exercised, that is to say, in the manner prescribed by law, the appointment vested in the appellee legal rights which could not be disturbed by the Legislature. We are not to be understood, of course, as questioning the rule stated in *Davis* v. *State,* 7 Md. 161; *Anderson* v. *Baker,* 23 Md. 531, and other cases cited by the appellant, that, "Where the office is of legislative creation, the Legislature can modify, control or abolish it, and within these powers is

embraced the right to change the mode of appointment." But that rule cannot apply to an office created by the Constitution, which directs how it shall be filled, fixes the term and provides for the removal of the incumbent.

2. The second proposition of appellant is that ordinance No. 87 was not a valid exercise of the power given to the Mayor and City Council of Baltimore, his contention being that the power of appointment was conferred upon the corporation known as the Mayor and City Council of Baltimore, and not upon the Mayor and the City Council as separate departments of the city government; that, therefore, the Legislature may regulate the manner in which that power shall be exercised, and that as section 25 of the charter provided that municipal officers should be appointed by the Mayor, subject to confirmation by a majority vote of all the members of the Second Branch of the City Council, the appellee was not appointed according to law. But even if we admit that the Legislature had the power contended for by the appellant, which, however, we do not decide, we cannot accept the view that the charter conferred upon the Mayor the power to appoint constables. Section 25, so far as it bears upon the question, is as follows: "The Mayor shall have the sole power of appointment of all heads of departments, heads of sub-heads of departments, municipal officers not embraced in a department, and all special commissioners or boards, except as otherwise provided in this article, subject to confirmation by a majority vote of all the members of the Second Branch of the City Council, etc. The charter, from section 32 to section 208, inclusive, then provides separately for the appointment of all officers and members of boards and commissions, and in each and every instance, except in cases of the comptroller, city register, surveyor, constable and public printer, declares that the appointment shall be made "By the Mayor in the mode prescribed by section 25 of this article." Section 33 and 205 provide for the election of the comptroller and surveyor by the voters of Baltimore City; sections 35 and 208 declare

that the city register and public printer shall be appointed by a joint convention of the two branches of the City Council, and section 206 provided that constables should be appointed by "the Mayor and City Council of Baltimore." If it was the intention of the framers of the charter, and of the Legislature that constables should be appointed by the Mayor, subject to confirmation by the Second Branch of the City Council, no good reason can be assigned for their failure to so provide, when they did so in every other instance, except in the few cases mentioned. The fact that they provided in every case for appointment by the Mayor, etc., except in the cases mentioned, shows conclusively that they did not intend to include constables in the general provisions of section 25, and that constables, and the other officers we have named, are the officers referred to in section 25 as those "otherwise provided for in this article." Moreover, if the Legislature had intended to provide for the appointment of constables by the Mayor in the manner prescribed by section 25, they would not, in view of the language employed in that section, have declared in section 206 that they were to be appointed by "the Mayor and City Council of Baltimore." The appellee having been appointed in accordance with the provisions of section 206, his appointment is not open to the objection urged by the appellant.

3. This brings us to the third and only remaining ground upon which the appellee's petition is resisted. Section 6 of Article 1 of the Constitution prescribed the oath to be taken and subscribed by all persons elected or appointed to office, etc., and section 7 of that article provides: "Every person hereafter elected or appointed to office in this State, who shall refuse or neglect to take the oath or affirmation of office provided for in the sixth section of this article, shall be considered as having refused to accept the said office; and a new election or appointment shall be made, as in case of refusal to accept, or resignation of an officer." Section 1 of Article 20 of the Code of 1912 declares that, "Every constable appointed shall, within thirty days after his appointment, make

the declaration of religious belief and take and subscribe the oath prescribed by the Constitution."

As the Constitution declares that a refusal or neglect to take the oath prescribed shall be considered a refusal to accept the office, and as the Code provides that constables *shall* take the oath prescribed by the Constitution within thirty days after their appointment, any person appointed to the office of constable who *neglects* to take the oath of office within thirty days after his appointment, must, under the mandate of the Constitution, be held to have refused to accept the office. The terms "neglect to take the oath," as used in this section of the Constitution, means neglect of the person appointed to take the oath within the time he is required by law to take it. Neglect, said Mr. Webster, means "to forbear one's duty in regard to," and it is in that sense that the term is used in the Constitution. It is the duty of a constable, under section 1 of Article 20 of the Code, to take the oath of office within thirty days after his appointment, and it is the neglect of that duty that the Constitution declares shall be considered a refusal to accept the office. There are cases which hold that provisions, like section 1 of Article 20 of the Code, in statutes merely requiring the oath of office to be taken within a certain time are directory only, while there are others sustaining the contrary view. 23 *Ency. of Law* (2nd ed.), 357-359. But where, in addition to such a statutory provision, the Constitution provides that a *neglect* to qualify shall be deemed a refusal to accept the office, there would seem to be no escape from the conclusion that a neglect to take the oath within the time fixed by the statute, must be treated as a refusal to accept the office. The question is, however, no longer an open one in this State, and is conclusively settled by the case of *Archer* v. *State*, 74 Md. 443, where section 7 of Article 1 was construed in connection section 5 of Article 6 of the Constitution, which declared that "the treasurer shall qualify within one month after his appointment by the Legislature." In that case JUDGE MILLER said: "The plain mandate of the

Constitution is that a person appointed by the Legislature to the office of treasurer shall qualify by taking the constitutional oath of office within one month after his appointment, and with equal explicitness it is declared that if he refuses or neglects to do so within that period of time, such refusal or neglect shall operate as a refusal to accept the office, and a new appointment must be made as if he had by affirmative words declined or refused to accept it. We are unable to give these clauses of the Constitution any other interpretation. We cannot treat them as merely directory and not mandatory." It is true, that in that case the Court was dealing with several sections of the Constitution, to which a more rigid rule of construction applies than frequently applied to statutes of like import. But what the Court expressly determined in that case was, that the terms "neglect to take the oath," used in section 7 of Article 1 of the Constitution, meant neglect to take the oath *within the time* within which a person appointed or elected *is required to take it,* and that such neglect, under that section of the Constitution amounts to a refusal to accept the office. A different construction would render section 7 of Article 1 of the Constitution meaningless and of no effect, for there would be no time when a person appointed or elected to office could be held to have refused the office because of his *neglect* to take the oath.

It is urged on behalf of the appellee that under section 11 of Article 70 of the Code he cannot be regarded as in default unless he neglected to take the oath within thirty days after he received notice of his appointment. That section is as follows: "Any person, whether elected or appointed to office, who shall decline or neglect to take and subscribe the oaths prescribed by the Constitution or by law or ordinance for the period of thirty days from the day when the commission of such officer has been received at the office of the respective clerks, or, in those cases in which no commission is sent to the clerks, within thirty days after receiving his commission or notice of his appointment, shall be deemed to

have refused said office." Under this section a person elected or appointed to office is required to take the oath of office within thirty days after his commission has been received by the clerk, or, where no commission is sent to the clerk, within thirty days after he receives his commission or notice of his appointment, while under section 1 of Article 20 of the Code, which relates to constables, a constable is required to take the oath within thirty days after his *appointment.* The Legislature having elected to make a special and different provision for constables, it is manifest that section 11 of Article 70 cannot, in so far as it conflicts with section 1 of Article 20, apply to them. These sections are codifications of section 5 of the Act of 1852, Chapter 172, and section 9 of the Act of 1854, Chapter 18. Section 5 of the Act of 1852 provided: "That any person whether elected or appointed to office, who shall decline or neglect to take and subscribe the oaths and affirmations for the period of thirty days after the returns of elections or notifications of appointments, shall be made or left at the offices of the aforesaid clerks, shall be deemed to have refused acceptance of such office." That section was amended by section 9 of the Act of 1854, which provided that section 5 of the Act of 1852, "shall be so altered and amended, that the refusal to accept office shall be presumed where the party elected or appointed has refused to take and subscribe the oath or affirmation of office within thirty days from the day when the commission has been received at the office of the respective clerks, instead of the thirty days from the returns of the elections." The Code of 1860, Article 68, title "Official Oaths," section 10, contains the provision now found in section 11 of Article 70 of the Code of 1912, under the same title, and section 1 of Article 23 of the Code of 1860, title "Constables," provided that, "Every constable elected shall, within thirty days after his commission has been received by the clerk of the Circuit Court of his county, or the Superior Court of Baltimore City, if in the City of Baltimore, make the declaration of religious belief and take and subscribe the oaths prescribed

by the Constitution before said clerk." After the adoption
of the Constitution of 1867, providing for the appointment
of constables by the County Commissioners and Mayor and
City Council of Baltimore, the Code of 1888, section 1,
Article 20, title "Constables," provided, as does the present
Code, that constables "shall" take the oath of office within
thirty days after their appointment. Notwithstanding the
general provisions of section 10 of Article 68 of the Code of
1860, ever since the adoption of that Code there has been a
special provision for the qualifications of constables, and
since the adoption of the Code of 1888, they have been re-
quired to take the oath within thirty days after their ap-
pointment. It is therefore apparent that the Legislature
never intended section 11 of Article 70 to apply to them.
Moreover, although section 146 of Article 81 of the Code of
1912, provides for a tax on commissions of constables and
justices of the peace, the change made in section 1 of Article
23 of the Code of 1860 by the Code of 1888, would indicate
that the Legislature determined that commissions should not
be issued to constables.

But even if we assume that sec. 11 of Art. 70 does apply
to constables, the appellee forfeited his right to the office
under that section by his neglect to qualify within thirty
days after he received notice of his appointment. The evi-
dence shows that he received such notice prior to the 4th
of April, 1912, and that he did not produce the evidence
of his appointment and offer to take the oath of office until
the 13th of May following. He has no ground upon which
to complain of the refusal of Mr. Campbell to administer
the oath of office to him on the 4th of April. He did not,
on that day, produce a copy of the ordinance or a certificate
of his appointment, and no notice of appointment had been
received at the office of the clerk of the Superior Court.
Without such evidence Mr. Campbell was not required to
administer the oath. *Magruder* v. *Tuck,* 25 Md. 217, Sec.
11 of Art. 70 of the Code does not require a written notice
to be given to a person elected or appointed; and the notice

referred to in that section is knowledge, acquired from any source. Notice is defined by Mr. Webster to mean "intelligence, by whatever means communicated; knowledge given or received." *Words and Phrases,* vol. 3, 4849. In *White* v. *Fleming,* 114 Ind. 560, 16 N. E. Rep. 487, where the statute required notice to be given of a special meeting of the county board, the Court held that oral notice was sufficient. It is said in *Baltimore* v. *Whittington,* 78 Md. 231, "A notice is regarded in law as actual when the party sought to be affected by it knows of the particular fact, or is conscious of having the means of knowing it, although he may not employ the means in his possession for the purpose of gaining further information." In the case of *Minnick* v. *State,* 154 Ind. 379, 56 N. E. Rep. 851, the Court held that a written notice of Post's election was not necessary, and that having been otherwise informed, it was his duty to qualify within the prescribed time. The appellee was not only informed of his appointment by one of the constables appointed by Ordinance No. 87, but Mr. Campbell told him that the ordinance was in the Mayor's or City Solicitor's office. With that notice of his appointment, it would have been his duty under sec. 11 of Art. 70 of the Code to produce to the clerk of the Superior Court the evidence of his appointment and offer to qualify within the thirty days mentioned in that section, and his neglect to do so would have created a vacancy in the office. *Sappington* v. *Slade,* 91 Md. 640.

We hold for the reasons stated, first, that the appellee was lawfully appointed by Ordinance No. 87 of the Mayor and City Council of Baltimore; second, that his appointment was not annulled by the Act of 1912, Ch. 823, and, third, that the appellee, by his failure to produce the evidence of his appointment and offer to qualify before the 13th of May, 1912, forfeited his right to the office of constable of Baltimore City, and that the order of the Court below from which this appeal was taken, must be reversed, and the petition of the appellee dismissed.

> *Order reversed, with costs, and petition dismissed.*